517 So.2d 314 (1987)
STATE of Louisiana
v.
Larry PERKINS.
Nos. KA 87 0479, KA 87 0480.
Court of Appeal of Louisiana, First Circuit.
November 10, 1987.
Writ Denied February 12, 1988.
Bryan Bush, Dist. Atty. by Richard Sherburne, Dist. Atty., Baton Rouge, for plaintiff/appellee.
Office of the Public Defender by Jack Nossaman, Asst. Public Defender, Baton Rouge, for defendant/appellant.
Before LANIER, CRAIN and LEBLANC, JJ.
LANIER, Judge.
The defendant, Larry Stevens Perkins, was charged by a bill of information with simple burglary, a violation of La.R.S. 14:62. He pled not guilty and was tried by a jury which convicted him of attempted simple burglary, a responsive verdict to the charged offense. See La.C.Cr.P. art. 814(A)(44). Defendant was subsequently charged, adjudged and sentenced as a second felony habitual offender. La.R.S. 15:529.1(A)(1). The court sentenced defendant to imprisonment at hard labor for a term of six years. This appeal followed.

FACTS
The instant offense occurred at the Greyhound Bus Station located on Florida Boulevard in Baton Rouge, Louisiana. At the time of the offense, three employees were *315 working at the station: Edward L. Adams, Larry Turner and an unnamed employee. Adams was working in a security capacity; Turner, who worked as a baggage handler, was performing some cleaning duties.
Adams and Turner testified that the instant offense took place after they had closed the bus station for business, sometime between approximately 12:30 and 1:00 a.m. Adams attached a "closed" sign to the front door of the station, and, with the assistance of Turner, he placed a large garbage can in front of the front doors. The doors could not be locked because another employee had apparently taken the keys home with him upon leaving work. Turner testified that the bus station remained illuminated after it closed. However, the area behind the ticket counter was not lighted.
Adams testified that, after he stepped out of the bus station for two or three minutes, he came back inside and noticed a pair of "penny loafer" shoes in the middle of the floor near the ticket counter. He knew the shoes were not there moments before when he had gone outside. Adams began looking around. When he glanced behind the ticket counter, he saw defendant behind it. Defendant was trying to get through a locked door where the money and tickets are kept. Adams testified that, upon seeing defendant behind the counter, he signaled Turner to come and whispered to him that someone was inside the area behind the ticket counter. Turner hollered at defendant and asked him what he was doing in there. Adams testified that defendant came from behind the ticket counter through a locked door, which could be opened only from behind the ticket counter. Defendant "cleaned his socks off," put his shoes back on and "strolled" out the bus station. Adams yelled for another employee to call the police, asked defendant what he was doing and told defendant he was in an unauthorized area, but defendant did not say anything.
Turner testified that he was inside the bathroom doing some cleaning and had walked out. At that time, he noticed a pair of shoes in the middle of the floor. He was going in the back of the bus station to get some cleaning material, when he looked through a hole through which the ticket agent gives him luggage and observed two legs of someone walking inside the area behind the ticket counter. Turner testified that, at about that time, Adams was signaling to him. He stuck his head through the hole and looked in defendant's face before backing away. By then, both he and Adams were yelling, and defendant walked out of the bus station "like nothing had [ever] happened." He did not see defendant put the shoes on, but he saw defendant walk out wearing them. Turner testified that he saw defendant unsuccessfully try to open the cash register drawer and the locked door to where the safe is located. He further testified that the area behind the ticket counter was also locked but that there is a way to get inside that area through a "little door you raise up, and all [defendant] had to do was hit that door and knock it down" and "just crawl through it."
Adams and Turner testified that they had no knowledge that defendant had taken anything from the bus station or that any doors had been pried open. Additionally, Turner testified that he did not see any burglary tool in defendant's hands.
At about 2:45 a.m., Baton Rouge City Police Officer Lyle Johnson was dispatched to the bus station. He talked to Adams, who gave him a description of defendant. After broadcasting the description over the police radio, Johnson began looking for a man fitting the description. He found defendant at the Sunbeam Bread Bakery about three blocks from the bus station. He placed defendant under arrest and advised him of his constitutional rights.

SUFFICIENCY OF EVIDENCE
In his only assignment of error, the defendant argues that the evidence was insufficient to maintain his conviction of "simple burglary". He argues that the evidence is clear, convincing and overwhelming that he did not make an unauthorized entry into the terminal. In support of his argument, defendant states that there can be no inference drawn from the *316 evidence that he entered the premises in an unauthorized manner because: (1) he was not seen entering and could have already been inside and (2) since the front door to the station was unlocked and the station was lighted, it is probable that he was unaware that the station was not open for business. Defendant also argues that the state did not prove that he had the specific intent to commit a felony or a theft.
In State v. Mathews, 375 So.2d 1165 (La. 1979), a majority of the Louisiana Supreme Court determined that the United States Supreme Court case of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), required that the standard of review when considering the sufficiency of the evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard for the appellate review of facts in criminal cases has been made statutory. La.C.Cr.P. art. 821; State v. Captville, 448 So.2d 676 (La.1984); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). The Jackson standard of Article 821 is an objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La.R.S. 15:438 provides that the finder of fact must be satisfied the overall evidence "excludes every reasonable hypothesis of innocence." La.R.S. 15:438 does not establish a stricter standard of review than the Jackson standard but "provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence." State v. Chism, 436 So.2d 464, 470 (La. 1983).
A plea of not guilty places upon the state the burden of proving beyond a reasonable doubt each element of the crime charged. La.R.S. 15:271; La.C.Cr.P. art. 804(A)(1); State v. Humphrey, 412 So.2d 507 (La. 1981); State v. Gomez, 433 So.2d 230 (La. App. 1st Cir.1983), writs denied, 440 So.2d 730 (La.1983) and 441 So.2d 747 (La.1983).
To challenge a conviction on the basis of insufficiency of the evidence, defendant should have proceeded with a motion for post-verdict judgment of acquittal. See La. C.Cr.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error.
Simple burglary is defined in La.R.S. 14:62, in pertinent part, as follows:
Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein....
An attempt is defined in La.R.S. 14:27(A), (B), in pertinent part, as follows:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; ....
Thus, to be found guilty of attempted simple burglary, a defendant must have a specific intent to make an unauthorized entry of "any dwelling, vehicle, watercraft, or other structure ..." and to commit a felony or any theft therein. La.R.S. 14:27 and 62; State v. Walker, 328 So.2d 87 (La. 1976).
La.R.S. 14:10(1) defines specific intent as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." Specific intent need not be proven as a fact. It may be inferred from the circumstances of the transaction and the actions of the defendant. La.R.S. 15:445; State v. Graham, 420 So.2d 1126 (La.1982); State v. Moore, 477 So.2d 1231 (La.App. 1st Cir. 1985); writs denied, 480 So.2d 739, 741 (La.1986).
The evidence shows that Adams and Turner observed defendant inside the unlighted *317 area behind the ticket counter. The door to that area was locked and could be opened only from the inside, although the area could be entered from the outside through a "little door" which could be raised, knocked down and crawled through. While inside the area behind the ticket counter, defendant tried to open the cash register drawer and a door (leading to where a safe, cash and bus tickets were kept), both of which were locked. After exiting the ticket counter area and before leaving the bus station, defendant was seen putting on the pair of shoes which Adams and Turner had observed before they detected defendant's presence.
Viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact (the jury) could have found that the state proved the elements of attempted simple burglary beyond any reasonable doubt, to the exclusion of every reasonable hypothesis of innocence. Under the instant circumstances, defendant certainly did not enter the area behind the ticket counter with a view toward transacting business. The evidence shows that the entry was unauthorized and that it was made with the intent to commit a theft. The area behind the counter clearly falls within the term "structure" as that term is used in La.R.S. 14:62. Cf. State v. Baggett, 292 So.2d 201 (La.1974); State v. Route, 221 La. 50, 58 So.2d 556 (1952).
This assignment is without merit.

PATENT ERROR
This court has discovered error patent on the face of the proceedings which requires us to remand this matter for resentencing. La.C.Cr.P. art. 920. A bill of information charging defendant as a multiple offender was filed after the jury convicted him of attempted simple burglary. The bill of information charged that he had been convicted of attempted aggravated rape and simple robbery on January 29, 1974.
La.R.S. 15:529.1(D) provides that, upon the filing of a multiple offender bill of information, the trial court shall cause the defendant to be brought before it and "shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true." State v. Martin, 427 So.2d 1182 (La.1983). La.R.S. 15:529.1 further implicitly provides that the defendant should be advised by the court of his right to remain silent. State v. Johnson, 432 So.2d 815 (La.1983).
The record reflects that on the date of defendant's multiple offender hearing the trial court asked the defendant if he wanted to change his previous not guilty plea to the allegation of the multiple offender bill of information and stipulate that he was a habitual offender. Defendant indicated this was correct. Although the record shows the trial court generally informed defendant that the state would have to prove he was "the same Larry Perkins that's been convicted of a previous felony and within the specific amount of time", the trial court did not inform defendant of the specific allegation contained in the multiple offender bill of information, his right to be tried as to the truth of the allegation, and his right to remain silent. These failures of the trial court constitute error patent on the face of the record and require the habitual offender sentence to be vacated. State v. Burge, 506 So.2d 759 (La.App. 1st Cir.1987); State v. Boston, 463 So.2d 783 (La.App. 2nd Cir.1985); State v. Vincent, 439 So.2d 1124 (La.App. 4th Cir.1983), writ denied, 472 So.2d 913 (La. 1985).

DECREE
For the foregoing reasons, the defendant's conviction is affirmed; however, the sentence is vacated, and the case is remanded to the trial court for resentencing.
AFFIRMED IN PART; VACATED AND REMANDED IN PART.