LOTTINGER, Judge.
Defendant, J.D. Davis, Jr., and Alex Sanders were jointly charged by bill of information with simple burglary. La.R.S. 14:62. Defendant pled not guilty and was tried by jury, which convicted him of the responsive offense of attempted simple burglary. Defendant was subsequently charged, adjudged, and sentenced as a Fourth Felony Habitual Offender. The court sentenced defendant to imprisonment at hard labor for a term of twenty-five years, with credit for time served. He has appealed, urging eight assignments of error:
1. The trial court erred by denying defendant’s motion to have a new counsel appointed.
2. The trial court erred by denying defendant’s motion for mistrial during closing arguments.
3. The trial court erred by qualifying Linda Martin as an expert witness.
4. The trial court erred by overruling defendant’s objection to being fingerprinted during the habitual offender hearing.
5. The trial court erred by adjudicating defendant a habitual offender.
6. The trial court erred by denying defendant’s motion for new trial.
7. The evidence is insufficient to support the jury’s verdict.
8. The trial court erred by imposing an excessive sentence.
Assignments of error one through six were not briefed on appeal and, therefore, are considered abandoned. Uniform Rules— Courts of Appeal, Rule 2-12.4.
FACTS
Town and Country Furniture is a retail furniture store located on Airline Highway in East Baton Rouge Parish. It originally consisted of a single building used for display purposes. To its rear, a separate warehouse building was constructed; and, thereafter, the two buildings were joined by additional construction, resulting in a single edifice. The business is open to the public from 9:30 a.m. to 5:30 p.m. on Tuesdays, Wednesdays and Fridays, and from 9:30 a.m. to 8:00 p.m. on Mondays and Thursdays. The business was protected by a silent alarm security system.
During the early morning hours of August 13, 1987, Damon Casamore, the vice-president of the business, received a tele *845 phone call from the company operating the silent alarm security system that someone was breaking into Town and Country Furniture. Casamore asked the security company to allow him to listen to the noise that was being made by whoever was breaking into the furniture store. The security company then activated a microphone which permitted Casamore to hear the noise. According to Casamore, it sounded like someone was breaking into the building, i.e., like someone was beating and bending metal. No voices could be heard, and it could not be determined whether or not the sounds were being made by one or more than one person.
The police had already been notified. After receiving the call from the security company, Casamore proceeded to drive to the furniture store.
Officer Dale Discharry and Detective Tucker arrived at the furniture store at about 1:45 a.m. in Discharry's police unit. They were the first officers at the scene. Other officers were being dispatched to the scene, and Discharry and Tucker waited for their arrival.
When the other officers got to the store, the perimeter of the furniture store was secured. It was determined that all the outer doors to the building were locked. The only apparent point of entry to the building was a hole in the rear comer of the building at its northeast side. The hole had been made into the warehouse portion of the building, apparently by pulling the tin or other metal material away from the wall. The warehouse consisted of two levels, i.e., a ground floor level and an upper floor level about ten feet above the lower level. The hole was apparently large enough for an individual to pass through it, and it led to the lower level of the warehouse.
Officer Daniel Brim of the Baton Rouge City Police Canine Division had gone to the scene with his German Shepherd dog, Rex. When Brim and his dog proceeded around the building to check for any point of entry, Brim observed a black male flee from the hole on the northeast side of the building and run in an easterly direction. Brim yelled to the suspect to stop. When the suspect failed to stop, Brim released Rex. Rex chased the suspect through some woods. Shortly thereafter, other officers stopped and arrested the suspect) Alex Sanders, who was alone in a vehicle he was driving about a block from the furniture store.
The officers waited for Casamore to arrive at the scene. When Casamore got there, the officers asked him to let them in the building, explaining that they had unsuccessfully tried to gain entrance through the doors. Casamore then unlocked the front door, entered, and walked through the building to the back of the warehouse and opened an overhead door to allow Officer Brim and Rex to enter the building.
Before he and Rex made their entry, Brim gave a verbal warning (to anyone who might be inside) that he was going to search the building with a dog and that, if anyone inside did not come out, he would release his dog. After receiving no response to the warning, Brim sent Rex into the building. Rex ran into the building and went up some stairs leading to the upper floor level of the warehouse. Upon reaching the upper level, Rex indicated to Brim that someone else was present. Brim looked up and saw a suspect’s feet on top of some boxes. The suspect (subsequently identified as defendant) was positioned at a height “higher than head high” and out of the reach of Rex. Brim issued a command that defendant come down, but defendant did not move. When Brim repeated the command, defendant stated that he was spending the night up there. Brim finally convinced defendant to come down. However, when defendant came down, he tried to run down the stairs toward the lower level. At that time, Brim released Rex, who caught defendant. Defendant was then advised of his consitutional rights and taken into custody.
The only damage to the building was the hole in the building’s wall. Investigating officers found a set of socket wrenches, a power drill, power sander and other power tools scattered about the driveway to the rear of the building. According to Casa- *846 more, these items were dropped by Sanders as he fled the scene. Casamore testified that these items were normally kept inside the warehouse at the opposite comer of the building from the apparent point of entry. A flashlight was found by the officers . “right next” to the apparent point of entry.
Casamore testified that mattresses had been stored in the rear of the warehouse on its lower level. On the upper level, wrought iron patio furniture, boxes of tables and various cardboard boxes had been stored. During the police investigation, it was discovered that various items, including small tables, lamps and pieces of furniture, had been stacked inside the building adjacent to the apparent point of entry. According to Casamore, those items were not previously there and had been moved there. Officer Discharry testified that one person could have easily moved the items.
Casamore testified that he did not remember having ever seen defendant prior to seeing him in the custody of the police on the day in question. Casamore stated that defendant did not have permission to be inside the building.
The main entrance to the furniture store is the front door. The store has sixteen employees. Casamore testified that it was possible that, during the store’s business hours, someone could have walked through the store, gone into the warehouse, climbed the stairs to the second level, and hidden there. According to Casamore, to do so, such an individual would have to have walked past about fifteen store employees. However, Casamore admitted the employees might not have paid attention to such an individual.
The state did not introduce any fingerprint evidence from the crime scene or the vehicle in which Alex Sanders was stopped. Officers Brim and Discharry testified that they never saw defendant and Alex Sanders together. Discharry stated that the only time he saw defendant and Sanders together was either in his office or at the booking desk. Discharry further stated that, when the registration of the vehicle (in which Sanders attempted to flee) was checked, it was determined that the vehicle was not registered to defendant.
ASSIGNMENT OF ERROR NO. 7
By means of this assignment, defendant submits that the evidence is insufficient to support the jury’s verdict. Relying on State v. Jacobs, 504 So.2d 817 (La.1987), defendant asserts that the state failed to prove he had the specific intent to commit a felony or theft, an element of attempted simple burglary. Defendant argues that the evidence proved, at most, the unauthorized entry of a building. He further argues that there was no evidence introduced at trial to connect him to the other suspect (Alex Sanders), and that the evidence introduced does not exclude reasonable doubt that he made an unauthorized entry into the building to spend the night.
We note that, in order to challenge a conviction on the basis of insufficiency of the evidence, defendant should have proceeded by way of a motion for a post-verdict judgment of acquittal. See La. Code Crim.P. art. 821; State v. Britt, 510 So.2d 670, 672 (La.App. 1st Cir.1987). Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error.
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987). This standard is codified in La.Code Crim.P. art. 821. When circumstantial evidence is used to prove the commission of a crime, La.R.S. 15:438 provides that, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. Ultimately, all evidence, both direct and circumstantial, must be sufficient to satisfy a rational *847 juror that the defendant is guilty beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965, 968 (La.1986).
Simple burglary is defined in La.R.S. 14:62, in pertinent part, as follows:
Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein....
Specific intent to commit a felony or theft is required for attempted simple burglary, La.R.S. 14:27 and 14:62; State v. Jones, 426 So.2d 1323, 1325 (La.1983); State v. Marcello, 385 So.2d 244, 245 (La. 1980).
La.R.S. 14:10(1) defines specific intent as follows:
Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
Specific intent need not be proven as a fact. It may be inferred from the circumstances of the transaction and the actions of the defendant. La.R.S. 15:445; State v. Graham, 420 So.2d 1126, 1127 (La.1982); State v. Moore, 477 So.2d 1231, 1234 (La. App. 1st Cir.1985), writs denied, 480 So.2d 739 and 741 (La.1986).
An attempt is defined in La.R.S. 14:27, Subsections A and B, in pertinent part, as follows:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt....
Hence, to be found guilty of attempted simple burglary, a defendant must have a specific intent to make an unauthorized entry of “any dwelling, vehicle, watercraft, or other structure_” to commit a felony or any theft therein. La.R.S. 14:27 and 62; State v. Walker, 328 So.2d 87, 88 (La. 1976); State v. Perkins, 517 So.2d 314, 316 (La.App. 1st Cir.1987), writ denied, 519 So.2d 141 (La.1988).
Herein, the state attempted to prove its theory that, in concert, defendant and Alex Sanders committed simple burglary of the furniture store. On the other hand, defendant, in essence, concedes in brief that he made an unauthorized entry of the store; and he theorizes that he made the unauthorized entry only with the intent of spending the night in the store.
According to Casamore’s testimony, it was possible that someone might have entered the furniture store during business hours and that such an entry might have been accomplished without any of the store’s employees paying any attention to it. When Casamore listened to the noises inside the store over the security company’s microphone, he heard no voices and could not determine whether or not the noises were of one or more than one individual. Defendant was found inside the warehouse portion of the store on the second floor level, and he claimed he was there spending the night. Only Alex Sanders ran from the apparent point of entry that had been made in the wall of the building. The vehicle in which Sanders attempted to escape was not registered to defendant. Officers Brim and Discharry each testified that they did not see defendant and Sanders together. According to Discharry, the tables, lamps and pieces of furniture (found stacked inside the warehouse near the apparent point of entry) were items that could have been moved by one individual. There was no fingerprint evidence from the vehicle in which Sanders was stopped or from the crime scene to connect defendant and Sanders or to link defendant to the flashlight found at the scene, the tools found in the driveway outside the furniture store or the items found stacked in the warehouse near the hole in the store’s wall.
Accordingly, the evidence presented by the prosecution did not exclude every rea *848 sonable doubt as to the intent element of attempted simple burglary. Any evidence of defendant’s attempt to conceal himself from or flee from Officer Brim merely indicates defendant’s consciousness of guilt stemming from his unauthorized entry of the furniture store and does not necessarily indicate the intent to commit a felony or theft in the structure. Cf. State v. Jacobs, 504 So.2d at 820 (La.1987).
The prosecution’s evidence is at least as consistent with defendant’s theory as it is with the prosecution’s theory. The overall evidence, both direct and circumstantial, even when viewed in the light most favorable to the prosecution, does not exclude every reasonable doubt that defendant made an unauthorized entry into the furniture store to spend the night there. Cf State v. Jacobs. Thus, we find the evidence was legally insufficient to convict defendant of attempted simple burglary; and we now focus our attention as to whether or not a conviction for a lesser and included offense may be substituted for the jury’s verdict. See La.Code Crim.P. art. 821 E; State v. Byrd, 385 So.2d 248 (La. 1980).
Because of the difficulty of proving the intent element of simple burglary and attempted simple burglary of a place of business, the legislature in 1986 added La.R.S. 14:62.4, creating the crime of unauthorized entry of a place of business. This crime does not require proof of specific intent to commit a felony or theft in the structure. Additionally, in 1986, the legislature amended La.Code Crim.P. art. 814 A 44 to add “guilty of unauthorized entry of a place of business” to the list of responsive verdicts to a charge of simple burglary. See State v. Jacobs, 504 So.2d 821-822.
The evidence in the record is unequivocal as to the unauthorized entry of Town and Country Furniture. But cf. State v. McBride, 504 So.2d 840, 843 (La. 1987). The evidence, viewed in the light most favorable to the state, supports a conviction of the lesser and included responsive verdict of guilty of unauthorized entry of a place of business. Accordingly, defendant’s conviction of attempted simple burglary is modified to a judgment of conviction of unauthorized entry of a place of business. Defendant’s multiple offender adjudication and sentences are vacated, and the case is remanded to the trial court for sentencing on the modified judgment of conviction. Cf. State v. LeBlanc, 506 So.2d 1197, 1201 (La.1987). Consequently, we do not address defendant’s assignment eight, alleging the excessiveness of defendant’s original sentence.
Therefore, defendant’s conviction of attempted simple burglary is modified to a judgment of conviction of unauthorized entry of a place of business. The multiple offender adjudication and sentences are vacated, and this case is remanded to the trial court for sentencing on the modified judgment of conviction.
CONVICTION MODIFIED AND REMANDED FOR SENTENCING.