LeBLANC, Judge.
Defendant, Harold Anthony Harris and Tommy Cornell Redman[1] were jointly charged by bill of information with simple burglary, a violation of LSA-R.S. 14:62. Defendant pled not guilty and, after trial by jury, was found guilty as charged. The trial court sentenced defendant to imprisonment at hard labor for a term of ten years. Defendant has appealed, urging nine assignments of error:
1. The trial court erred by overruling defendant’s objection to hearsay evidence.
2. The trial court erred by overruling defendant’s objection to the testimony of Richard Belanger who had neither been sequestered nor designated as the state’s representative in accordance with the provisions of LSA-C.E. art. 615 exempting such a state witness from the court’s order of sequestration.
3. The trial court erred by overruling defendant’s objection to the testimony of Richard Belanger regarding the unavailability of a potential witness, Betty Adams.
4. The trial court erred by allowing the state, over defense counsel’s objection, to propound questions to Deputy Dusenberry calling for speculation as to the tracking dog’s behavior.
5. The trial court currently allowing the state, over defense counsel’s objection, to testify regarding the tracking dog’s performance in an unrelated investigation.
6. The jury’s verdict is contrary to the law and the evidence.
7. The trial court erred by denying defendant’s motion for a new trial.
8. The trial court erred by denying defendant’s motion for post verdict judgment of acquittal.
9. The trial court erred by imposing an excessive sentence.
Assignment of error number one was not briefed on appeal and, therefore, is considered abandoned. Uniform Rules— Courts of Appeal, Rule 2-12.4. However, because we find that assignments six and eight are meritorious and require reversal of defendant’s conviction and sentence, we pretermit discussion of defendant’s other assignments of error.
During the early pre-dawn hours of May 9, 1987, (at approximately 2:00 to 3:00 a.m.) a police radio broadcast reported a possible burglary in progress at the corner of West Park and St. Charles Streets in Terrebonne Parish. Several police officers, including Terrebonne Parish Sheriff’s Deputies and a Louisiana State Trooper, went to the location given in the broadcast.
Deputies LeCompte and Toups arrived there at about the same time as the state trooper. Shortly thereafter, Deputy Fan-guy joined the other officers at the scene. About fifteen to twenty minutes later, Deputy Dusenberry went to the scene with his police dog, Kassan.[2]
When LeCompte arrived at the corner of West Park and St. Charles Streets, he observed two black male subjects[3] standing *222 at a pay telephone across the street from the Canal Service Station located at 1201 West Park Street; LeCompte also observed that the large plate glass window at the front of the station was broken.[4] According to LeCompte, neither of the subjects was running away. The taller subject, defendant, started to walk away; the other subject, co-defendant Redman, stayed at the telephone. At that point, LeCompte crossed the street, approached the subjects, and asked for their identification. Defendant identified himself as Harold Harris, but his co-defendant did not have any identification with him.
LeCompte testified that the pay telephone rang a couple of times and either defendant or Redman answered the telephone and immediately hung up the receiver. Later, the telephone rang again and LeCompte answered it. He talked to a female on the telephone and then hung up the telephone.
Dusenberry’s testimony reflects that when he arrived at the location, defendant and Redman were near the area of the pay telephone and not yet in police custody. However, Dusenberry, Toups and Le-Compte placed defendant in front of a police unit and Redman at the “right window” of the unit. The hands of both men were placed on the top of the unit, and they were told not to move. Defendant and Redman remained in their respective positions.
At this point, Dusenberry went to the area of the Canal Service Station’s broken, front plate glass window with Kassan. According to Dusenberry, he and Kassan approached the area at an angle in order not to “mess up the tracks.” When they got near the station, Kassan looked around the area of the broken glass and did not want to go into the building.
From the area of the broken glass, Du-senberry gave Kassan a command to track. In response, Kassan went straight from the area of the broken glass to the pay telephone across the street where defendant and Redman had been standing. From the pay telephone, Kassan immediately went to the front of the police unit where defendant was standing (a distance Dusenberry estimated to be a maximum of five feet[5]) and started barking at defendant. According to Dusenberry, Kassan did not approach Redman. Dusenberry testified that if Kassan had been tracking two individuals (namely, defendant and Redman), he would have moved back and forth between the two individuals being tracked, instead of remaining with defendant as he did. Dusenberry further testified that, on the morning in question, Kas-san was tracking in his “normal tracking fashion” as he had been trained to do.[6]
Tranquilla Higdon, the manager of the Canal Service Station, testified that on the morning in question she was not at the station at the time of the break-in. However, after the break-in (apparently at the request of the police), she went to the station. At that time, Higdon discovered that about twelve hundred dollars worth of cigarettes (that had been delivered to the Station on the preceding day) was missing.
*223 At trial, defendant took the stand in his own defense. He denied that he had burglarized the station and related his version of the events which occurred on the morning in question. At about 12:30 a.m., defendant began walking home from a craw-fish boil he had attended. Along the way at about 12:45 a.m., he noticed he had lost his keys (presumably his house keys). Knowing that his mother had a duplicate set of keys, he walked to a business establishment where he telephoned his mother at about 1:00 a.m. During defendant’s telephone conversation with his mother, she agreed to put the duplicate set of keys under a floor mat at her house. Defendant then went to his mother’s house, got the keys, and started walking home again. Shortly before 2:00 a.m., when defendant got to the St. Charles Bridge, Redman (who was at the pay telephone across the street from the Canal Service Station) called out to defendant, asking him if he had a cigarette. Defendant replied in the affirmative, walked across the street and gave Redman a cigarette. At that time, Redman (who was talking to someone on the telephone) asked the person to whom he was talking to call him back on the telephone and hung up the telephone.
Defendant and Redman talked to each other for about five to ten minutes before the police arrived. According to defendant, he did not run when the police arrived because he had not done anything wrong. He and Redman did start to walk away, but the officers told them to stop. They complied with the request to stop and were told by the officers to put their hands against a police unit.
Defendant testified that Redman was about three feet from him on the same side of the police unit when the police dog came up to them and started to bark. Defendant could not determine if the dog was barking more at him or at Redman. Defendant stated that he and the officers had a discussion at the scene for about thirty minutes before he was taken to the sheriff’s office and booked on the burglary charge.
ASSIGNMENTS OF ERROR NOS. SIX AND EIGHT:
In these assignments, defendant contends that the jury’s verdict of guilty is contrary to the law and the evidence. He submits that because no rational trier of fact could have failed to have a reasonable doubt as to his guilt, the trial court should have granted his motion for post verdict judgment of acquittal.
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged and defendant’s identity as the perpetrator of that crime beyond a reasonable doubt. See State v. Moore, 477 So.2d 1231, 1233 (La.App. 1st Cir.1985), writs denied, 480 So.2d 739 and 480 So.2d 741 (La.1986). This standard is codified in LSA-C.Cr.P. art. 821. When circumstantial evidence is used to prove the commission of a crime, LSA-R.S. 15:438 provides that, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. Ultimately, all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Rosi-ere, 488 So.2d 965, 968 (La.1986). See also State v. Jacobs, 572 So.2d 1140 (La.App. 1st Cir.1990).
Simple burglary is defined in LSA-R.S. 14:62, in pertinent part, as follows:
Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein....
Herein, there was no direct evidence that defendant or Redman broke the plate glass window at the front of the Canal Service Station or that either of them entered or exited the structure; there was no evidence whatsoever that either man had in his possession any property that was stolen *224 from the burgled premises. Additionally, there were no fingerprints or other such evidence from the burgled premises linking defendant or Redman with the burglary of the structure; neither defendant nor Red-man concealed himself, fled or attempted to conceal himself or flee upon the arrival of the police or after their arrival.[7]
The evidence presented at trial by the state to prove its theory (that defendant committed this simple burglary of the station) was entirely circumstantial, i.e., defendant’s mere presence at the pay telephone across the street from the burgled structure; the testimony of LeCompte, Panguy, and Dusenberry describing the actions of Kassan in going from the area of the broken plate glass window at the exterior of the Station to the pay telephone and then to defendant; and Dusenberry’s testimony, as the dog’s certified handler, that Kas-san’s actions showed that he was tracking one individual, defendant. On the other hand, the theory presented through defendant’s own testimony was that he did not burglarize the burgled structure, that while walking home he had walked across the street to the pay telephone where Redman was, in response to Redman’s request for a cigarette, and that the two of them were merely engaging in a conversation near the pay telephone when the officers arrived.
The prosecution’s evidence is at least as consistent with defendant’s theory as it is with the state’s theory. Thus, assuming every fact proved that the evidence tends to prove in order to convict, the evidence in this case clearly does not exclude the reasonable hypothesis of innocence that defendant did not participate in the burglary of the Canal Service Station and that the offense was committed by someone else. Accordingly, the facts established by the direct evidence and those reasonably inferred from the circumstantial evidence, when viewed in the light most favorable to the prosecution, could not persuade a rational trier of fact that the state proved beyond a reasonable doubt that defendant made even an unauthorized entry of the structure (a requisite element of the offense of simple burglary) or that defendant aided and abetted, counseled, or procured another person to make such an entry. Thus, we find the evidence was legally insufficient to convict defendant of simple burglary. See State v. Jacobs, 504 So.2d 817, 821-822 (La.1987).
We now focus our attention on whether a conviction for a lesser and included responsive offense may be substituted for the jury’s verdict. See LSA-C. Cr.P. art. 821 E; State v. Byrd, 385 So.2d 248 (La.1980). Pursuant to LSA-C.Cr.P. art. 814 A (44) as amended by Act 646 of 1986, the law in effect and applicable at the time of the alleged offense, those lesser and included responsive offenses were: attempted simple burglary (a violation of LSA-R.S. 14:27 and 14:62) and unauthorized entry of a place of business (a violation of LSA-R.S. 14:62.4). Having already found the evidence insufficient to prove defendant made even an unauthorized entry of the Canal Service Station, we may pot substitute a conviction for the offense of unauthorized entry of a place of business. To commit the remaining lesser and included offense of attempted simple burglary, defendant must have had a specific intent to make an unauthorized entry of “any dwelling, vehicle, watercraft, or other structure ...” and to commit a felony or any theft therein. LSA-R.S. 14:27 and 14:62; State v. Perkins, 517 So.2d 314, 316 (La.App. 1st Cir.1987), writ denied, 519 So.2d 141 (La.1988). However, because a rational trier of fact, viewing all the evidence present in this case in the light most favorable to the state, could not have concluded beyond a reasonable doubt that defendant possessed the requisite specific intent to commit attempted simple burglary, we may not substitute a conviction for that lesser and included responsive offense either. Accordingly, we reverse defendant’s conviction and sentence and enter an order of acquittal. Cf. State v. Jacobs, 572 So.2d 1140 (La.App. 1st Cir.1990).
*225 . REVERSED; ORDER OF ACQUITTAL ENTERED.
EDWARDS, J., concurs.

. We note that the co-defendant’s surname is spelled "Redman" in the bill of information, and it is spelled "Redmond" in the trial transcript.

. LeCompte, Fanguy and Dusenberry testified on behalf of the state. Toups and the state trooper did not appear as witnesses at the trial.

.Over defense counsel’s hearsay objection, Le-Compte was allowed to testify that the police radio broadcast included a BOLO (be on the lookout) for two black males, one tall and one short, wearing dark colored clothes and that the subjects at the pay telephone matched these descriptions. Thereafter, (again over defense *222 counsel's hearsay objection) Fanguy gave similar testimony concerning the BOLO. The trial court’s rulings overruling these defense objections formed the basis for defendant's assignment of error number one, which was abandoned on appeal, as previously noted.

. The state introduced State Exhibits S-l, S-2, and S-3 (photographs) depicting the broken plate glass window at the front of the Canal Service Station.

. LeCompte testified that the distance from the pay telephone to where defendant was standing at the police unit was about twenty feet; and Fanguy estimated the distance to be about fifteen to twenty feet.

.Dusenberry testified that Kassan is trained to track “disturbed vegetation” and human scent. Dusenberry stated that in tracking human scent, Kassan can track the odor given off by a person who in fear perspires (as a criminal who bears being caught might do) and the human scent from an article of clothing of a particular person. Dusenberry explained regarding "disturbed vegetation," that whenever someone walks over a surface including grass, shells, rocks, blacktop and a concrete highway the surface is disturbed, leaving an odor that Kassan can track.

. We note that a defendant’s flight, concealment, or attempts to do either are indicative of consciousness of guilt. See State v. Davenport, 445 So.2d 1190, 1195 (La.1984).