504 So.2d 817 (1987)
STATE of Louisiana
v.
Augustus JACOBS.
No. 85-KH-2042.
Supreme Court of Louisiana.
April 6, 1987.
*818 Augustus Jacobs, in pro per., Michael Gallagher, S.J., Kim Moore, Loyola Law School Clinic, for applicant.
William J. Guste, Jr., Atty. Gen., Bryan Bush, Dist. Atty., for respondent.
LEMMON, Justice.[*]
We granted certiorari to review relator's application for post-conviction relief.[1] 494 So.2d 315. Upon reviewing the record of the trial which resulted in relator's conviction of simple burglary, we conclude that the prosecution failed to prove beyond a reasonable doubt relator's "intent to commit a felony or any theft therein" when he entered a building without authority. La. R.S. 14:62.
Relator and his brother were apprehended by the police inside a residential building leased by Mrs. Evelyn Vicks. Two officers, responding to a report of a burglary in process, saw someone with a flashlight inside the dark building. When the police entered the building with a dog, they found relator under the kitchen table. Relator's brother was found in the bedroom under the only bed in the house. Food was found on the kitchen table. A chisel, a screwdriver and a flashlight were also found on the floor of the bedroom near the bed. According to the police, someone had apparently slept in the bed.
Mrs. Vicks had rented the house two months earlier. Although she had moved many of her belongings, including a radio, stereo equipment, appliances and furniture, into the house, she had not yet begun to occupy the house. Most of her things were still in boxes.
Mrs. Vicks testified that she kept all of the doors locked and that the electricity and gas had not been turned on by the utility company. She further testified that *819 she had never prepared or kept food in the house and had never eaten nor slept there. She denied that the flashlight was hers. She conceded, however, that her husband, a roofer, kept many tools in a toolbox in the kitchen and that the screwdriver and chisel might belong to him. She also verified that a friend had used some tools to reassemble the bed after it had been moved into the house. She found nothing missing from the house and nothing in disarray except the bed and a basket of clothes which had been moved.[2]
Relator's brother testified that he had just returned to Baton Rouge after working in another area for a year and had been told that the police were looking for him. He was familiar with the house leased by Mrs. Vicks because one of his friends had previously rented it. When he noticed that someone had moved into the house but wasn't living there, he decided to stay there temporarily and entered through the rear door, which he claimed was not locked. He testified that he had stayed in the house for three days prior to being arrested and had been supplied with food by his brother. He admitted he had brought the flashlight into the house, but denied ownership of the tools found on the bedroom floor.
After relator and his brother were tried jointly on charges of burglary of an inhabited dwelling, the jury returned a responsive verdict of guilty of simple burglary. In denying relator's motion for a new trial, the trial court expressly ruled that the evidence of intent was sufficient.
The court of appeal affirmed. 435 So.2d 1014. As to the issue of sufficiency of the evidence of intent, the court reasoned as follows:
"The totality of the circumstances presented, in this case, as well as defendants (sic) lack of employment, past records, possession of tools customarily used for break-in, the impeached credibility of the defendant who testified, when considered in totality, clearly provides a reasonable basis for the jury's findings of intent on the part of defendants to commit a theft or felony.
....
... [O]ne of the defendants in the instant case was found with tools that could certainly be considered burglary tools beside him under the bed. The trial jury apparently found the testimony of Mrs. Vicks and the police officers credible, and that of Percy Jacobs not credible. It was established that defendant gained entrance through a locked door. The defendants were discovered hiding in the dwelling, items belonging to Mrs. Vicks had been tampered with, and defendant's own testimony established that he had been involved in or that the police were looking for him `for another burglary.' The totality of these circumstances is clearly sufficient to support the jury's finding that these defendants made an unauthorized entry into another's dwelling with the specific intent to commit a theft."
Id. at 1019.
We disagree that the evidence of intent was sufficient to support the conviction of simple burglary and accordingly reverse.
The defendant in a criminal case is entitled to have the jurors instructed that the evidence must satisfy them that the defendant's guilt has been proved beyond a reasonable doubt and that they must give the defendant the benefit of every reasonable doubt arising from the evidence or the lack of evidence. La.C.Cr.P. art. 804 A. When the case involves circumstantial evidence, the defendant is additionally entitled, under the provisions of La.R.S. 15:438, to have the jurors instructed that they must be satisfied that the overall evidence "excludes every reasonable hypothesis of innocence". Thus, the defendant in a circumstantial evidence case has a statutory right to an instruction in the trial court that the jurors must conclude that no reasonable hypothesis of innocence exists, as well as a constitutional (and statutory) right to be convicted only upon proof of guilt beyond a reasonable doubt. In re *820 Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
An appellate court in Louisiana, reviewing the sufficiency of the evidence to support a conviction, is controlled by the standard enunciated by the Supreme Court of the United States in Jackson v. Virginia, 443 U.S. 307 (1979). Under that standard, the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.[3]
When the conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.[4]State v. Sutton, 436 So.2d 471 (La.1983).
To support a conviction of simple burglary under La.R.S. 14:62, proof of the defendant's presence in a building by means of an unauthorized entry is not alone sufficient.[5]State v. Jones, 426 So.2d 1323 (La.1983). The prosecution must also prove beyond a reasonable doubt the intruder's intent to commit a theft or felony therein.
In State v. Marcello, 385 So.2d 244 (La. 1980), the defendant was seen in the hallway of a public utility's office building. The security guard who spotted the defendant had been attracted by the sound of running water in the restroom. The defendant ran back into the restroom and climbed out of a window, but was quickly apprehended by police. The defendant explained that he had slept on the roof and had entered the building to wash up in the restroom. The security guard, who had cleaned the restroom earlier, found fresh dirt and debris in the restroom, indicating that someone had just washed up there. The defendant did not have any burglary tools or stolen property in his possession. This court, noting that the defendant's flight under the circumstances did not necessarily indicate that he had intended to commit a theft or felony in the building he had entered without authority, held that the evidence was insufficient to support the conviction of simple burglary.
In the present case, the circumstances relied on by the court of appeal as proving intent simply do not exclude every reasonable doubt as to the intent element of simple burglary. Whether the entry was through a locked or an open door is of no significance to the intent issue. The finding of tools customarily used for break-ins also bears primarily on the conceded issue of unauthorized entry. The fact that the intruders were hiding when apprehended inside the house merely indicates a consciousness of guilt of criminal trespass and does not necessarily indicate an intent to steal. The fact that relator's brother had been told the police were looking for him "for another burglary" proves nothing as to relator's intent to commit a theft or felony when he made the unauthorized entry here. There was no evidence before the jury as to relator's lack of employment or past criminal record. The impeached *821 credibility of relator's brother does not supply affirmative evidence of guilt, but rather provides only a basis for an appellate court reviewing the sufficiency of evidence to disregard the particular testimony so that there is no probative value either way.[6] Finally, the intermediate court's observation that items belonging to Mrs. Vicks had been tampered with is an overstatement of the evidence. When asked by the prosecutor if she noticed anything out of order when she was called to the house, Mrs. Vicks testified as follows:
"Q Did you notice anything out of order inside the house when you were brought inside the house?
"A Okay, like in the bedroom, you know, like the bed was straight and everything. A jacket and a couple of other lights, you know, but you had to hook them up, it was in a basket which I had emptied the basket out and it was a couple of other things but I can't remember what they were.
"Q Some stuff in the basket that wasn't in that basket before?
"A Right.
"Q Where was this basket located?
"A In the bedroom."
Whatever the import of this obscure testimony, this evidence clearly did not tend to prove beyond a reasonable doubt the intruders' intent to commit a theft or felony inside the house.
Here, the prosecution attempted to prove its theory that relator and his brother had just broken into the house and were caught before they could get away with anything. On the other hand, relator's theory of innocence was that his brother was staying temporarily in the house (concededly by means of an unauthorized entry) and that he was supplying his brother with food. Even if relator's brother's testimony is completely disregarded, the evidence presented by the prosecution is at least as consistent with relator's theory as it is with the prosecution's theory.
According to the testimony of the police officers, someone had apparently been sleeping in the bed and had eaten a meal recently in the house. The lessee, on the other hand, denied that she had ever eaten or slept there. Moreover, while one reasonable hypothesis as to the tools on the bedroom floor was that relator's brother had just used them to break into the house, another reasonable hypothesis consistent with the lessee's testimony was that the lessee's friend who reassembled the bed in the house used tools from the toolbox in the kitchen and left the tools in the bedroom. The overall evidence, both direct and circumstantial, even when viewed in the light most favorable to the prosecution, does not exclude every reasonable doubt that relator and his brother made an unauthorized entry into the house in order for the brother to live there temporarily. Thus, the evidence does not prove beyond a reasonable doubt that they made an unauthorized entry with the intent to commit a theft or felony inside the house.
Because of the difficulty of proving the intent element of simple burglary in La.R.S. 14:62, the Legislature in 1983 and 1986 added La.R.S. 14:62.3 and 62.4, creating the crimes of unauthorized entry of an inhabited dwelling and unauthorized entry of a place of business. These crimes, which do not require proof of intent as an essential element of the crime, have a range of sentence up to six years and fill the gap between simple burglary (range of sentence up to twelve years) and criminal *822 trespass (range of sentence up to ninety-one days). The crime of unauthorized entry of an inhabited dwelling is now included as a responsive verdict for an indictment charging simple burglary of an inhabited dwelling, and the crime of unauthorized entry of a place of business is now included as a responsive verdict for an indictment charging simple burglary. La.C.Cr.P. art. 814 A(44.1) and (44). However, since these crimes were not in existence when relator's offenses were committed, this court cannot modify the verdict pursuant to La.C.Cr.P. art. 821 and render a judgment of conviction of the lesser included responsive offense of unauthorized entry of an inhabited dwelling.[7]
Because the prosecution did not present sufficient evidence to prove the requisite intent beyond a reasonable doubt, relator is acquitted as to this offense.[8]Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).
Accordingly, the judgment of the court of appeal is reversed, and defendant is discharged from prosecution for this offense.
NOTES
[*] Associate Justice Luther F. Cole, recused.
[1] The court of appeal affirmed relator's conviction in May, 1983, and he did not seek timely review of that judgment. In October, 1985, relator in proper person filed a "Motion for Delayed Appeal" in this court, raising the question of sufficiency of the evidence. Since the request for review of the intermediate court's judgment was untimely, we treated the filing as an application for post-conviction relief. Although we generally require that such an application be filed in the district court, we noted that both lower courts had already ruled on the sufficiency issue. We therefore simply granted the application in order to provide further review of a seemingly meritorious claim. See State ex rel. Womack v. Blackburn, 393 So.2d 1216 (La. 1981).
[2] The police moved the bed when they apprehended relator's brother from beneath the bed. Nothing was missing from the basket of clothes which had been on the bed.
[3] The Louisiana Legislature adopted the Jackson standard in enacting La.C.Cr.P. art. 821, pertaining to post-verdict motions for acquittal based on insufficiency of evidence.
[4] La.R.S. 15:438 does not establish a separate standard of review. As stated by this court in State v. Chism, 436 So.2d 464, 470 (La.1983), La.R.S. 15:438 "may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, [but] it emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence".
[5] La.R.S. 14:62 provides in part:

"Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein...."
[6] When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. An evaluation of the reasonableness of other hypotheses of innocence provides a helpful methodology for determining the existence of a reasonable doubt. The reviewing court does not simply determine whether there is another possible hypothesis which could explain the events in a exculpatory fashion. Rather, the reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether any alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Captville, 448 So.2d 676 (La. 1984).
[7] The dwelling in this case arguably was not inhabited at the time of relator's unauthorized entry. (This was evidently the reason the jury returned a responsive verdict.) There is apparently no felony offense presently in the Code which punishes the unauthorized entry of a building that is neither an inhabited dwelling nor a place of business, unless there is proof of intent to commit a theft or felony.
[8] After relator was convicted in these proceedings, he pleaded guilty to a separate charge of burglary committed four days earlier. This reversal has no apparent effect upon that conviction or sentence.