ARMSTRONG, Judge.
The defendant, Gladys Blunt, was charged with and convicted of a violation of LSA-R.S. 14:26, relative to the offense of conspiracy to commit theft of property valued over $500.00. Her motion for a new trial was denied, and she was sentenced to serve two and one-half years at hard labor. It is from this conviction and sentence that the defendant has appealed. On appeal Blunt argues (1) that there was insufficient evidence that she was a party to an agreement for stealing cars; and (2) that there was insufficient evidence that the stolen cars had an aggregate value of at least $500.00.
The record reflects that from 1981 through 1986, Blunt worked at The Louisiana Department of Motor Vehicles (“DMV”). Her duties included issuing duplicate vehicle registrations and license plates. She had access to the DMV computer so that she could see whether a car with a particular vehicle identification number (“VIN”) had a lien on it.
*679 Testimony at trial revealed the following. Charles Ross, Stewart Ross, and Darryl Walters were car thieves. They also knew Blunt well. One of the Rosses was married to Blunt’s sister and Blunt had known Walters since he was a child.
In order to sell the cars they stole, the Rosses and Walters needed registration certificates and license plates. They would steal VIN plates off of junked or abandoned cars. They stole approximately forty from a single junkyard. They would telephone Blunt at her office and read her the VIN’s they had stolen, sometimes twenty or thirty at a time. Blunt would check the VIN’s on the DMV’s computer to see if there were liens for those VIN’s. If there was a lien, then the Rosses and Walters would discard that VIN. If there was no lien, then a particular VIN could be used to obtain a registration and plates for a stolen car.
The Rosses and Walters would go to see Blunt at the DMV to obtain the registration and plates. They would fill out a form for a duplicate registration certificate (using the stolen VIN) and would forge the signature of the registered owner. They would change the addresses so that they could intercept mail sent to the registered addresses. Because Blunt knew the Ross-es and Walters, she knew the signatures they were signing were forgeries. They even forged the signatures of women. Blunt told Charles Ross that the Rosses and Walters would get caught.
Charles Ross promised Blunt that, in exchange for her help, they would “give her something”. Eventually, he sold her a stolen car at a very low price. (Also, Blunt was paid by a man at a parking lot with which Charles Ross was connected and, apparently, this was for her help in connection with the stolen cars.) Charles Ross went to Blunt to get registration on stolen cars “a lot of time” and Stewart Ross went to her twenty or thirty times. All of this took place over a considerable period of time because one of the twelve cars stolen in this case was stolen in the fall of 1985 (at the LSU-Tulane Football game), one was stolen in February 1985, one was stolen in October 1985, and one was stolen in July, 1985.
A review of the record reflects that there are no errors patent.
Because both of Blunt's assignments of error go to the sufficiency of the evidence, we must review the record in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
We reject Blunt’s first argument on appeal. The above-recited facts constitute overwhelming circumstantial evidence that there was an agreement by Blunt to help the Rosses and Walters with a long series of car thefts.[1]
In particular, (1) the close acquaintance of Blunt with the car thieves, (2), the large number of VIN’s they called into her, (3) the large number of times they went to her to openly register stolen cars, (4) the fact that Charles Ross promised and gave her compensation, and (5) the length of time involved, all point to the existence of at least a tacit agreement by Blunt to help the Rosses and Walters with car thefts. Possibly, there was no agreement before the first car theft. However, within a short time, it would have been clear to the Ross-es and Walters that Blunt was agreeable to helping them by checking VIN’s and reg *680 istering the cars they sold in the future. It also would have been clear to Blunt that the Rosses and Walters were going to continue stealing cars, in part at least, because they would have her help in checking VIN’s and registering them. At some point early in the series of car thefts Blunt had, by her actions if not by her words, agreed to help the Rosses and Walters with future car thefts by checking VIN’s and registering the stolen cars.
We agree with Blunt’s second argument on appeal. Twelve cars were stolen. However, the only specific evidence as to the value of any of them was that Blunt had bought one of them “cheap” for “$300.00-$400.00”. This is evidence only that the car purchased by Blunt was worth at least $300.00. No evidence as to the value of the other eleven cars was presented by the prosecution. The fact that several owners of the stolen cars testified as to the make, model, and year of their cars does not establish their value. See State v. Camp, 436 So.2d 723, 726 (La.App. 4th Cir.1983) (Barry, J., dissenting); Reversed on other grounds, 446 So.2d 1207 (La.1984). Thus, the state proved only a theft of items having a value of one hundred dollars or more, but less than a value of five hundred dollars. The maximum sentence Blunt could have received was two years imprisonment, or a fine of not more than two thousand dollars, or both. See La.R.S. 14:67, third full paragraph. Instead, she received a sentence of two and one-half years at hard labor. This was error.
Accordingly, the conviction is reversed, and we enter a conviction to the lesser offense of conspiracy to commit theft of goods valued at at least $100.00 but under $500.00. La.R.S. 14:67, third full paragraph. We also remand for resentencing under that statutory provision.
REVERSED IN PART AND REMANDED.

. LSA-R.S. 14:26 provides, in pertinent part:
Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the agreement or combination.
LSA-R.S. 14:67 provides in pertinent part:
Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.