h KATZ, Judge.

STATEMENT OF THE CASE

On February 26, 1998, the defendant, Willie Berry, was indicted for the second degree murder of Robert Garner. The defendant pled not guilty to the charge at his arraignment on March 2, 1998. The defendant’s first trial ended in a mistrial on June 22, 1998 due to a hung jury. After a second jury trial on September 1, 1998, the defendant was found guilty as charged and was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence.
It is from this conviction and sentence that the defendant now appeals.

STATEMENT OF THE FACTS

At approximately two o’clock in the afternoon on December 4, 1997, Devona Walker and Lakisha Atkinson were on their way home from McDonald’s on Car-rollton Avenue when they saw a white car crash into a tree. When they approached the accident scene, they saw the defendant, with a bloody face, lying on the ground on the passenger side of the vehicle. He asked them to call for an ambulance and his mother. Lakisha went to call for help while Devona stayed with the defendant. The defendant then told Devo-na that someone had been ^shooting at him. Devona asked the defendant if the driver, the victim, Robert Garner, was alive. The defendant called the victim’s name and tried to move him, but the victim did not respond. Devona testified that while they were waiting for help, she observed the defendant throw a gun into the nearby bushes. After the police arrived, she told the officers what she had observed.
Officer Shantyle Butler was the first officer to respond to the call. When she arrived on the scene, an emergency medical unit was on the scene. The driver of the vehicle had a gunshot wound to the head. The defendant, a passenger, was lying on the ground with injuries to his face. The defendant told the officer that he had been shot in the face.
Detective Wayne Favre was in charge of the investigation. When Detective Favre arrived on the scene, he instructed the crime lab technicians to photograph and process the scene. The victim and defendant were transported to the hospital. Detective Favre spoke with Devona Walker, who informed him that she observed the defendant throw a weapon into the bushes. The officer located the weapon and left it in place until the crime lab technician could retrieve it. Later that evening, another detective advised Detective Favre that a weapon had been found on the victim. Once the scene was secured, Detective Favre and Sergeant Washington went to the hospital to interview the defendant. When the officers arrived, they were informed that the defendant was being treated for lacerations to his face and a hip fracture.
That evening, Detective Favre took a statement from the defendant. The defen *971 dant told the officer that he and the victim were on their way to a store when the victim saw a guy who had wanted to buy a gun from the victim. They stopped to talk to this person and the victim gave a gun to the man. The man then leaned 13into the vehicle and fired the weapon. The defendant then blacked out. The defendant stated that he threw the weapon out of the car after the crash because he was afraid of guns.
Detective Favre returned to the scene and instructed that blood samples be taken from the vehicle and crime scene. Detective Favre then contacted Officer Ducote, an expert in traffic analysis. Officer Du-cote conducted a speed test and a crash test on the vehicle. After receiving Officer Ducote’s findings, Detective Favre obtained an arrest warrant for the defendant. Detective Favre testified that three spent .38 casings and blood samples were recovered from the scene.
The State and defendant stipulated that the bullets recovered during the autopsy and the casings found on the scene were fired from the weapon thrown into the bushes by the defendant.
Dr. William Newman, a forensic pathologist, performed an autopsy on the victim. Dr. Newman testified that the victim sustained three gunshot wounds to the head. One gunshot wound was a contact wound above the right eye, and there was soot around this wound. He further testified that based on his observations, the muzzle of the gun had to be tight on the forehead when the bullet was fired. The bullet went through the frontal lobe, and was recovered during the autopsy in the right posterior neck. This wound would have rendered the victim unconscious. The second bullet passed through the lobe of the right ear and entered the head near the right ear. This bullet was recovered in the soft tissue of the left temple area. The third bullet went through the right temporal area to the left anterior and exited the body. The victim died due to extensive cranial cerebral injury.
Officer Mark Ducote, an expert in traffic accident reconstruction, testified that he performed a “crush analysis” on the vehicle. Such an analysis determines |4how fast a vehicle was going at the time of impact. Officer Ducote determined that the vehicle was going twenty-two miles per hour at the time it crashed into the tree. The officer also stated that the vehicle had to have been steered to the right by someone, accidentally or intentionally, to have crashed into the tree. The vehicle would not have veered to the right by itself.
A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR

In his sole assignment of error, the defendant contends that the State failed to produce sufficient evidence to support his conviction for second degree murder.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. La. R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). *972 All evidence, direct and |ficircumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
The defendant was charged with and convicted of second degree murder, which is defined in pertinent part as: “The killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm.” La. R.S. 14:30.1. The defendant contends that the State failed to produce sufficient evidence to prove his identity as the perpetrator and/or that he had the specific intent to kill or inflict great bodily harm.
The defendant suggests that since the State did not produce any direct evidence that he was the person who shot the victim, the State failed in its burden of proof. However, the circumstantial evidence presented through the testimony of the State’s witnesses proved, beyond a reasonable doubt, that the defendant shot the victim. Dr. Newman stated that the victim was shot at very close range. In fact, one of the gunshot wounds was a contact wound to the right side of the head. The perpetrator had to be sitting or standing to the right of the victim. Ms. Walker testified that she saw the defendant throw a weapon into the bushes after the vehicle crashed into the tree. The parties stipulated that the weapon defendant threw into the bushes was the weapon used to shoot the victim. The bullets recovered during the autopsy and the casings found on the scene were fired from that weapon. Officer Ducote, the expert in accident reconstruction, further testified that someone had to have driven the vehicle into the tree.
The evidence produced by the State contradicts the defendant’s story that a third person leaned into the vehicle from the passenger side and shot the victim. The medical testimony further refutes the defendant’s statement that he was shot in the face. The defendant was not shot in the face; rather, he received treatment at | ¿the hospital for facial lacerations and a hip fracture. Further, Officer Ducote’s testimony contradicts the defendant’s statement that he blacked out and the vehicle veered into the tree.
The jury was presented with two different versions of how the incident occurred. The physical evidence supports the testimony of the State’s witnesses. Thus, the jury was well within its discretion in assessing credibility of the witnesses and determining that the defendant was the person who shot the victim. See State v. Harris, 624 So.2d 443 (La.App. 4 Cir. 9/16/93), writ denied, 93-2609 (La.6/24/94), 640 So.2d 1339.
The defendant also argues that the State failed to prove that he had the specific intent to kill or inflict great bodily harm on the victim. Specific criminal intent is a state of mind, and, as such, need not be proven as fact but may be inferred from the circumstances and the actions of the accused. State v. Meyers, 95-750 (La. App. 5 Cir. 11/26/96), 683 So.2d 1378, writs denied, 97-0015 (La.5/9/97), 693 So.2d 766, 98-2530 (La.2/5/99), 737 So.2d 745. Specific intent to kill may be inferred from a defendant’s act of pointing a gun and firing at a person. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, cert. denied, Seals v. Louisiana, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997).
The medical testimony presented by Dr. Newman reveals that the person who shot the victim had the intent to kill. The perpetrator placed the weapon next to the victim’s head and pulled the trigger. The perpetrator then shot the victim two more times in the head. Such close wounds to vital organs indicate an intent to kill or inflict great bodily injury. The State met its burden of proving that the defendant had the specific intent to kill or inflict great bodily harm on the victim.
|7The evidence presented by the State was sufficient for the jury to conclude that the defendant was guilty of the second degree murder of Robert Garner. This assignment is without merit.
*973 Accordingly, the defendant’s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.