766 So.2d 585 (2000)
STATE of Louisiana
v.
James BULLOCK.
Nos. 99-KA-2124, 99-KA-2125.
Court of Appeal of Louisiana, Fourth Circuit.
June 14, 2000.
*586 Harry F. Connick, District Attorney, Susan Erlanger Talbot, Assistant District Attorney, New Orleans, Louisiana, Counsel for Plaintiff-Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, Louisiana, Counsel for Defendant-Appellant.
Court composed of Judge WILLIAM H. BYRNES, III, Judge MIRIAM G. WALTZER, Judge PHILIP C. CIACCIO, Pro Tem.
*587 BYRNES, Judge.
On June 17, 1996, the defendant was charged in two separate bills of information with violating portions of the Uniform Controlled Dangerous Substance Law. More specifically, in case no. 383-601 the defendant was charged with violating La. R.S. 40:966, relative to possession of heroin. In case no. 383-611 the defendant was charged with violating La. R.S. 40:967, relative to possession of cocaine. Both offenses allegedly occurred on April 7, 1996. On January 14, 1997, the court found probable, denied the defendant's motions to suppress evidence, and denied motions to suppress a statement.
On July 31, 1997, a twelve-person jury found the defendant guilty as charged on the heroin charge, and a six-person jury found the defendant guilty as charged on the cocaine charge. That same day the defendant orally moved for judgments of acquittal and new trials, to be supplemented by written motions. On August 27, 1997, defense counsel filed motions for new trial, which the court denied. Counsel also filed motions for post-verdict judgments of acquittal. On August 29, 1997, defendant filed pro se motions for new trial and for arrest of judgment. Following a hearing on September 11, 1997, the court denied the motions for judgment of acquittal and sentenced the defendant to serve a four-year sentence on the heroin charge and a three-year sentence on the cocaine charge. The sentences are to run concurrently with each other and with another sentence on a conviction for possession of stolen property. The state subsequently filed a multiple bill; however, the multiple bill was allegedly quashed and does not form the basis for this appeal. On March 11, 1998, the defendant filed oral motions for appeal, which the court granted. On March 17, 1998, the court again granted out of time appeals in both cases. No motions to reconsider sentences were filed. The defendant was granted out of time appeals on March 5 and 11, 1998.

STATEMENT OF FACT
At trial, Troopers Sean Nedd and Robert Bennett[1] of the Louisiana State Police testified that they were conducting a roadblock with several other officers on April 7, 1996, for the purpose of checking for proof of insurance. The roadblock was set up at the Louisa Street entrance ramp to Interstate 10 in New Orleans.
Trooper Nedd was stationed near the ending portion of the acceleration lane on the Louisa Street on ramp and Trooper Bennett was stationed further back at Louisa Street itself in his vehicle. Trooper's Bennett's assignment was to sit at the back and keep cars from backing down the ramp causing accidents. At around 11:30 in the morning, the defendant attempted to back down the ramp when he encountered the roadblock. Trooper Bennett radioed the other officers that someone had backed up. After he finished clearing another driver, Trooper Nedd walked toward Trooper Bennett and the defendant. Trooper Bennett approached the defendant and asked him to step out of his vehicle. When the defendant exited the vehicle both troopers noticed that he was nervous and excited; he was sweating profusely. When asked for a driver's license, he stated that he did not have a driver's license. When asked for identification, the only thing he presented was his Social Security card. He did not provide any insurance or registration for the vehicle. The defendant stated that the car belonged to his daughter, and he was going to his daughter's house. While the defendant was standing along side the driver's side of the car, Trooper Bennett called the radio room and requested a driver's license check to find out if a license had been issued to the defendant. While verifying that the defendant had a license, the troopers walked to the passenger side and looked inside the car. The first thing *588 Trooper Nedd looked at was the steering column, then he looked on the seat for weapons. Although Trooper Nedd saw no weapons in the vehicle, both troopers observed a clear plastic bag lying on the front seat with a syringe, bottle cap, the bottom of a coke can, and a piece of nylon. Trooper Nedd testified that the bag was on the driver's seat.[2] At the trial of the heroin case Trooper Bennett testified that the bag was on the passenger seat.[3] At the trial of the cocaine case, Trooper Bennett testified that the bag, "was located on the front seat, next to the passenger, the driver's seat."[4] From experience, the troopers recognized these items as drug paraphernalia. Trooper Bennett seized the items. The troopers walked back to tell the defendant what they had found. When he saw the officer coming out of the car he made a statement to the effect that he was just a drug user and not a seller. The defendant was given his Miranda rights, arrested for possession of drug paraphernalia, and taken to Central Lockup. Trooper Bennett testified that he did not recall if anyone gave the defendant a ticket for backing up on the interstate.
At trial, Trooper Nedd identified the items seized that day. He stated that the aluminum can had a dark residue in the bottom portions. The interior of the bottle cap contained a white substance with some scrape marks toward the edge. He testified that at the time he first saw the syringe, the plunger was pushed forward and had a clear white substance in the interior with the needle on it. A noticeable amount of liquid was in the syringe. Trooper Nedd also identified two razor blades as blades that were also inside the plastic bag with the other objects.
Trooper Nedd and Trooper Bennett testified that they were familiar with this type paraphernalia. Both stated that drug users commonly use a nylon stocking or any type of tie to shut off a main artery in order for the vein to pop up. Drug users tie the stocking around their arms, and then they inject the substance used in the syringe into their veins.
The parties stipulated that Howard Pentes of the Louisiana State Police Crime Laboratory was an expert in the field of drug analysis. Dr. Pentes testified that his report indicated that residue was found in the seized items. He testified that the syringe and aluminum bottle cap tested positive for heroin.[5] Additionally, the syringe, the aluminum bottle cap, and the aluminum can bottom tested positive for cocaine.[6] The jury found the defendant guilty as charged in each case.

ERRORS PATENT
A review of the record for errors patent reveals that the trial court sentenced the defendant immediately after denying his motions for post verdict judgments of acquittal. The minute entry of sentencing does not reflect that the defendant waived his right to a twenty-four hour delay between the denial of his motions and sentencing. La.C.Cr.P. art. 873. In State v. Augustine, 555 So.2d 1331 (La. 1990), the Louisiana Supreme Court held that failure to waive the twenty-four hour delay voided the defendant's sentence if the defendant attacks his sentence, even though the defendant fails to specifically allege this failure as an error on appeal. However, the Fourth Circuit, in State v. Collins, 584 So.2d 356 (La.App. 4 Cir. 1991), held that the failure to observe the delay would be deemed harmless error where the defendant did not challenge his sentence on appeal. Therefore, in the present cases where no error is raised as to the defendant's sentences, the failure of the trial court to observe the delay period would be considered harmless error.

*589 ASSIGNMENT OF ERROR NUMBER 1

In the first assignment of error the defendant argues that the trial court erred in denying his motion to suppress the evidence. The defendant argues that the police officers had no reasonable suspicion to make the initial stop; accordingly, the illegal stop tainted the subsequent seizure of drug paraphernalia.
Citing State v. Parms, 523 So.2d 1293 (La.1988); State v. Church, 538 So.2d 993 (La.1989), and other cases invalidating sobriety checkpoints, the defendant attacks his initial stop based on the alleged unconstitutionality of the insurance checkpoint set up by the officers in the instant case. The challenge to the constitutionality of the checkpoint has no merit for several reasons. First, there is no evidence that the defendant raised the constitutional issue at trial or presented any facts to the trial court to support a finding that the insurance checkpoint in the instant case was unconstitutional. Secondly, the mere fact that the courts have invalidated certain sobriety checkpoints does not mandate a finding that an insurance checkpoint is unconstitutional. In fact, no Louisiana court has issued a blanket ruling invalidating all checkpoints. Rather, the courts have examined specific checkpoints prior to making a ruling on the constitutionality of the particular checkpoint.
Moreover, it does not appear that the sobriety checkpoint cases are directly applicable to the instant case as specific legislation referring to checkpoints for purposes of checking for insurance has been enacted. Pursuant to La. R.S. 32:861(A)(1), every vehicle registered in the State of Louisiana must be covered by an automobile liability policy or functional equivalent. To assure compliance with this statute the Louisiana Legislature enacted La. R.S. 32:863.1(B) which provides in relevant part:
§ 863.1. Evidence of compulsory motor vehicle liability security contained in vehicle; enforcement; penalty; fees
A. No owner or lessee of a self-propelled motor vehicle registered in this state, except a motor vehicle used primarily for exhibit or kept primarily for use in parades, exhibits, or shows, or agricultural or forest use vehicles during seasons when they are not used on the highways, shall operate or allow the operation of such vehicle upon any public road, street, or highway in this state unless there is contained within the vehicle one of the following documents evidencing that the motor vehicle is in compliance with R.S. 32:861 relative to compulsory motor vehicle liability security:
* * * *
B. When a law enforcement officer stops a vehicle at an administrative violations checkpoint, or in connection with an alleged violation of the law, or for any other reason, or when a law enforcement officer investigates an accident, the law enforcement officer shall determine if the owner or lessee of each vehicle is in compliance with the provisions of this Section which require evidence of liability insurance or other security to be contained in the vehicle....
The wording of the aforementioned statute suggests that administrative violation checkpoints have been sanctioned by the Legislature. In this respect such stops differ from sobriety checkpoints which tend to be lengthier. Rather, the stops are more similar to the limited stop allowed in State v. McHugh, 92-1852 (La.1/6/94), 630 So.2d 1259.
The issue in State v. McHugh was whether a wildlife law enforcement officer could stop a hunter leaving a wildlife habitat during hunting season and detain him briefly to ascertain whether he had a valid hunting license, to ask whether he had game in his possession, and, if so, to request to inspect the game. After being subjected to such a stop, the defendants freely and voluntarily acknowledged their possession of game and allowed the wildlife officer to inspect a dressed and quartered *590 buck deer in their ice chest. Because the divided deer portions were not tagged as required by law the officer charged the defendants with statutory violations. The defendants moved the trial court to suppress the evidence and statements obtained during the stop. The trial court denied their motion, but the court of appeal granted a writ, reversed, and ordered the evidence and statements suppressed. The Supreme Court reversed and remanded the case to the trial court. The court held that because the defendants were exiting a wildlife area during hunting season under circumstances clearly indicating that they had been hunting and possibly had game in their possession, it was not an unreasonable search, seizure or invasion of privacy under either the state or federal constitution for the game agents to stop the defendants briefly for the limited purpose of demanding that they exhibit their hunting licenses, ask if they had any game, and request to inspect the game in their possession.
In the instant case the defendant was observed backing off the ramp of an entrance to the Interstate wherein a checkpoint had been set up. The action of the troopers in detaining him briefly to ascertain if a lack of insurance was the cause of this action was reasonable under the circumstances. Further, when stopped, the troopers noticed the defendant was very nervous, somewhat shaking, and sweating profusely. Coupled with the fact that he had no driver's license, no proof of insurance, and no registration, the officers had reasonable suspicion to glance in the vehicle wherein the seized items were found in plain view. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER 2
In the next assignment of error, the defendant argues that the State failed to prove beyond a reasonable doubt that he was knowingly in possession of cocaine and heroin.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. La. R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
In this assignment of error the defendant argues that the amount of residue on the seized items was so small that the officers only arrested him for possession of drug paraphernalia. The fact that the officer did not acknowledge the presence of any illicit substance at the time of the arrest, according to the defendant, indicates that likewise he had no guilty knowledge of possession of cocaine.
To support a conviction for possession of narcotics, the state must prove that the defendant was in possession of the illegal drug and that he knowingly or intentionally possessed the drug. La. R.S. 40:966; La. R.S. 40:967; State v. Chambers, 563 So.2d 579 (La.App. 4 Cir.1990). Guilty knowledge is an essential element of *591 the crime of possession of cocaine. State v. Goiner, 410 So.2d 1085 (La.1982). In State v. Spates, 588 So.2d 398 (La.App. 2 Cir.1991), the court noted that although a conviction for possession of cocaine can stand on the possession of the slightest amount of the drug, the amount of the substance will have some bearing on the defendant's guilty knowledge. In addition, the possession of drug paraphernalia is indicative of guilty knowledge.
In State v. Jones, 94-1261 (La.App. 3 Cir. 5/17/95), 657 So.2d 262, the court concluded that the defendant's actions and possession of an object for which the only use was to smoke cocaine provided sufficient evidence to show that the defendant knowingly possessed cocaine. This Court, in State v. Gaines, 96-1850 (La.App. 4 Cir. 1/29/97), 688 So.2d 679, writ denied, 97-0510 (La.9/5/97), 700 So.2d 503, held that defendant's possession of a glass pipe which contained cocaine residue was sufficient to prove defendant's possession of cocaine.
In the case at bar, the items containing cocaine and heroin residue were found in a vehicle being driven by the defendant. The items were in a plastic bag on the seat wherein the defendant was sitting. When confronted with the seized items, the defendant spontaneously admitted that he was a drug user. There appears to be no question that the drug paraphernalia belonged to the defendant and that he was in actual possession of the drug paraphernalia. The officers testified that the nylon stocking was used to tie the arm so that a vein to inject the drugs could be located. The syringe, which could be used to shoot up, still had a small amount of liquid in the plunger at the time the defendant was arrested. The bottom of the can contained observable amounts of residue, as did the bottle cap. Thus, the evidence found in the defendant's possession was sufficient to prove defendant's illegal possession of cocaine and heroin.
This assignment of error is without merit.
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] Trooper Robert Bennett's name in incorrectly spelled as Robert Banned in the transcript of the trial in the cocaine case (no. 383-611).
[2] Case # 99-KA-2124
[3] Case # 99-KA-2124
[4] Case # 99-KA-2125
[5] 98-KA-2124
[6] 98-KA-2125