11 LOVE, Judge.

STATEMENT OF FACTS

Tammy L. Piker was charged by bill of information on September 18, 2000, with burglary of an inhabited dwelling in violation of La. R.S. 14:62.2. At her arraignment on September 25th she pleaded not guilty. A twelve-member jury found her guilty of attempted burglary of an inhabited dwelling after trial on October 10th. The state filed a multiple bill charging Piker as a second offender, and after being advised of her Boykin rights, she pleaded guilty to the bill. She was sentenced on October 24th to serve three years at hard labor under La. R.S. 15:529.1. The defendant’s motion for reconsideration of sentence was denied, and her motion for an appeal was granted.
*718 At trial Ms. Paula Bowler of 941 Dau-phine Street testified that about 7:30 a.m. on August 31, 2000, she noticed water running down her driveway when she returned home after walking her dog.[1] She saw that the faucet was running in the courtyard and the left lower backdoor pane was broken. When she looked into her kitchen, she observed a woman standing there holding her checkbook in one hand and cash in the other. Ms. Bowler’s open purse was on a kitchen chair nearby. Ms. hBowler asked, “Lady, what are you doing in my house?,” and the woman answered, “I’m with Jimmy, and he’s in there.”. Ms. Bowler turned to a few people, who were standing near a grocery store across the street, and asked them to call 911. Ms. Bowler called to the woman a second time, saying,
“I don’t know who you are and I don’t know who Jimmy is, but you’re in my house going through my handbag. I want to know what you’re doing in this house.The police are coming, and you’re not coming out of the house because the police are going to get you.”
Ms. Bowler saw the woman “bolt” into the living room, and then she heard glass breaking. Ms. Bowler did not enter the house until after the police had finished taking fingerprints, but once she went in she noticed a brick on the kitchen floor, the drapes had been pulled down in the front bedroom, and a window was shattered in another bedroom. Sometime later, the police brought the defendant to her house, and Ms. Bowler identified her as the woman she observed in her kitchen.
Officer Roger Jones testified that he investigated the burglary on August 31, 2000, at 937 Dauphine Street after receiving a report that a woman was inside a residence. There he found a shattered glass pane in the kitchen and also the brick used to break the glass. Upstairs he found another shattered windowpane and blood stains on the broken glass. Looking out the broken window, Officer Jones saw a wooden fence streaked with blood and blood stains in the neighbor’s yard. The •officer followed the bloody trail until he came upon bloodstained blue jeans and a halter-top discarded on the ground; beyond the clothes, the bloody trail led to a house. There the resident told Officer Jones that a woman had recently asked for help, saying that she had been in an altercation next door; the neighbor had given her his clothes to wear. Ms. Piker was in the neighbor’s house, wearing men’s clothing and bleeding from the left leg; she was talking on the telephone.
| ^Officer James O’Hern also responded to the 911 call concerning the burglary. He accompanied Officer Jones to the neighbor’s yard. There the neighbor told him that a woman was in his house using his telephone. When the officer entered the house, he saw Ms. Piker wearing a man’s shorts and shirt and bleeding from a laceration on her leg. After she was arrested, she complained of pain in her feet because of glass embedded there, and she was taken to Charity Hospital. Ms. Piker indicated to Officer O’Hern that she wanted to explain to him what happened, and he advised her of her Miranda rights before she told him. Her statement was read to the jury.

ERRORS PATENT

A review of the record reveals an error patent with regard to defendant’s sentence. La. R.S. 14:62.2 provides that the first year of the sentence be without *719 benefit of parole, probation, or suspension of sentence; furthermore, La. R.S. 15:529.1(G) provides that the sentence for a multiple offender is to be without benefit of probation or suspension of sentence. As defendant was convicted of attempted simple burglary of an inhabited dwelling, the first six months of the sentence should have been imposed without benefit of parole. La. R.S. 14:27(D)(3). Such a restriction was not made. However, this court will not correct an error favorable to the defendant when the state has not raised it on appeal. State v. Fraser, 484 So.2d 122 (La.1986).

DISCUSSION

In a single assignment of error, Ms. Piker argues that the evidence is insufficient to support the conviction. She maintains that the State failed to present any evidence that she intended to commit a felony in the victim’s home.
l/The standard to be applied by this court in evaluating the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Duncan, 94-1045, p. 3 (La.App. 4 Cir. 12/28/94), 648 So.2d 1090, 1095. In undertaking the inquiry, either direct or circumstantial evidence may be considered to prove the elements of the crime. When circumstantial evidence forms the basis of the conviction, the elements must be proven so that every “reasonable” hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from the stan-. dard established in State v. Jackson, but rather an evidentiary guideline for facilitating appellate review of sufficiency of the evidence. State v. Jacobs, 504 So.2d 817, 820 (La.1987). Ultimately, to support a conviction, the evidence, whether direct or circumstantial or both, must be sufficient under State v. Jackson to satisfy any rational trier of fact that the defendant is guilty beyond a reasonable doubt. Id. at 820; State v. Hawkins, 90-1235, p. 27 (La.App. 4 Cir. 9/15/95), 667 So.2d 1070, 1086.
Ms. Piker was charged with simple burglary of an inhabited dwelling and convicted of the lesser offense of attempted simple burglary of an inhabited dwelling. The offense is defined as “the unauthorized entering of any inhabited dwelling ... with the intent to commit a felony or any theft therein....” La. R.S. 14:62.2. The crime of attempted simple burglary of an inhabited dwelling requires proof that the defendant committed “an act for the purpose of and tending directly toward” the unauthorized entry of an inhabited dwelling “with the intent to commit a felony or any theft therein.” La.R.S. 14:27; La.R.S. 14:62.2. Specific intent |smay be inferred from the circumstances and actions of the accused. State of Louisiana In Interest of A.G., R.N., 630 So.2d 909, 911 (La.App. 4 Cir.1993).
Ms. Piker points out that nothing was taken from the victim’s home and claims that she entered the home to use the telephone.
At trial, the jury heard live testimony and viewed photographs of all the evidence. Ms. Bowler testified that she found a glass pane in her back door shattered and observed Ms. Piker taking money from her checkbook. She also found the brick on her kitchen floor that was used to break the window. When Ms. Bowler asked why she was there, Ms. Piker first answered that she was with “Jimmy” and next ran upstairs and, after pulling drapes down in one bedroom, jumped from a second story window.
*720 The jury is in a unique position to judge the credibility and weight of the evidence before it. This court will not interfere with the jury’s verdict where, as here, the verdict simply indicates that the jury chose to accept as true one version of the facts offered to it over another version it found less credible. Viewing the evidence in the light most favorable to the jury’s verdict, this court finds that a rational juror could certainly have believed that Ms. Piker attempted to commit a theft in Ms. Bowler’s house. She broke into the kitchen and was seen taking money from Ms. Bowler’s purse. The fact that she did not complete the felony was probably due to her surprise at being confronted by the owner and her dog.
In the presence of persuasive circumstantial evidence, the jury found Ms. Piker guilty beyond a reasonable doubt of attempted burglary of an inhibited dwelling. Reviewing all of the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found all of the elements Rof attempted simple burglary of an inhabited dwelling beyond a reasonable doubt.

DECREE

For the foregoing reasons, we find the assignment of error to be without merit and affirm the defendant’s conviction and sentence.

AFFIRMED.

. Ms. Bowler and her dog, a 186 pound Great Dane, stood at the kitchen door, effectively blocking that exit.