JOAN BERNARD ARMSTRONG, Chief Judge.
11 STATEMENT OF THE CASE:
On April 11, 2007, the defendant, Jimmie L. Riley, was charged with simple burglary. On June 25, 2007, he entered a plea of not guilty. On January 15, 2008, the defendant’s first trial ended in a hung jury. On February 25, 2008, following a second trial, the defendant was found guilty as charged.
On April 1, 2008, the defendant was sentenced to serve four years at hard labor with credit for time served and concurrent with any other sentence. The State filed a multiple bill of information charging the defendant as a third felony offender. On April 30, 2008, the defendant was adjudicated a second felony offender. The State objected and noted its intent to seek writs. The defendant was sentenced to serve six years at hard labor with credit for time served and concurrent with any other sentence. On June 12, 2008, the State withdrew its intent to file a writ application. The defendant now appeals raising one assignment of error.

STATEMENT OF THE FACTS:

The following testimony was adduced at trial.
JOSEPH BURKE:
Direct-examination by the state:
Joseph Burke, assistant station manager for the Southeast Louisiana Disaster Recovery Administration, received a telephone call on the morning of March 11, | a2007, from Sonitrol Security informing him that the burglar alarm at the volunteer housing facility located at 2019 Simon Bolivar Street had been triggered. Soni-trol advised him that activity had been detected at the facility. Mr. Burke immediately proceeded to the facility to check out the call. The facility provides bunks, shower, kitchen and bathroom facilities as well as kitchen and bathroom products and small kitchen appliances for the use of the volunteers helping to rebuild the city. Next door at 2023 Simon Bolivar Street is the building used as the office for the facility. On the north side is a playground, and the church is on the corner of Simon Bolivar and St. Andrew Streets. The entire facility is protected by a wooden fence along the side of 2023 Simon Bolivar Street and a ten foot high chain link fence along the rear on St. Andrew Street. A chain link fence separates 2019 and 2023 Simon Bolivar Street. A gate allows passage from the rear of 2023 to the *1234 parking lot of 2019. The facility at 2019 is secured by a silent alarm system.
When Mr. Burke arrived at the facility he checked the front gate and found it locked. He then went around to the rear gate at the end of the playground. He entered the gate and walked across the parking lot to the rear of the facility. At various points along the way he observed paper towels, toilet tissue, toasters, small microwaves, crock pots and other items stacked outside. Mr. Burke telephoned the alarm company and requested that the police be called to the scene. About ten minutes later Sergeant Benjamin arrived and Mr. Burke escorted him to the rear of the facility. As they turned the corner of the facility they saw the defendant standing at the rear of the facility. The defendant was wearing a dark blue jacket and a white shirt. When the defendant saw the two men he attempted to climb the vines that were growing on the fence. Sergeant Benjamin pulled him down and handcuffed him. Mr. Burke observed a couple of boxes entangled in the vine onjgtop of the fence. Mr. Burke retrieved a ladder and removed the boxes. While on the ladder he observed, on the street side of the fence, several other boxes. Mr. Burke identified the property as belonging to the United Methodist Disaster Recovery Center. Mr. Burke did not give the defendant a key to the gate to enter the facility property.
Cross-examination by the defense:
Mr. Burke testified that the facility housed him and one other volunteer. Both had keys to the gate and the facility. There are two entrances to the facility, one in the front and one in the rear which are accessed through an alleyway. An iron gate fronts the alleyway. The gate was open but the lock was still closed. It appeared that someone had forced the gate open. Mr. Burke did not see a ladder in the back of the facility when he saw the defendant. The facility has three doors in the back; to his knowledge all three doors were locked. Mr. Burke called the police twice that morning. The first time they were unable to access the property from the perimeter gates. The second time Mr. Burke was on the scene and unlocked the perimeter gate. When Mr. Burke and Sergeant Benjamin observed the defendant he was not holding, packing or throwing over the fence any items from the facility. Once he saw Mr. Burke and Sergeant' Benjamin the defendant ran and attempted to climb the fence. The crime lab technicians arrived on the scene and entered the facility. Mr. Burke did not observe them dusting for fingerprints.
Re-direct examination by the state:
The gate that was forced open was the interior gate that connects the facility and the office and is inside the perimeter fence.
Re-cross examination by the defense:
|4According to Mr. Burke, to gain access to the inside of the facility without a gate key, a person would have to climb over the ten foot high perimeter fence.
SERGEANT RENE BENJAMIN:
Direct-examination by the state:
On March 11, 2007, Sergeant Rene Benjamin of the New Orleans Police Department responded twice to a dispatch of a business burglary at 2019 Simon Bolivar Street. He arrived the first time at approximately 10:30 a.m. but left because he was unable to gain access through the ten foot high perimeter fence gates which were locked. He advised the dispatcher to contact someone with a key and that he would return later. He responded the second time at approximately 11:00 a.m. Upon arrival he was met by Joseph Burke who unlocked one of the front gates and escorted him around the premises to investigate the call. As he and Mr. Burke walked *1235 toward the rear of the facility he observed the kitchen door open. The defendant was standing next to the open door. When the defendant saw Sergeant Benjamin and Mr. Burke he ran towards the chain link fence and attempted to climb over it. Sergeant Benjamin pulled the defendant down from the fence and detained him until Officer Brooks arrived. Sergeant Benjamin noted that none of the perimeter gates was unlocked and that the only way a person could enter was with a key or if he climbed the fence. He did not remember if the defendant made any statements when he was detained.
Cross-examination by the defense:
Sergeant Benjamin described the perimeter fence as a ten foot high chain link fence which surrounded the entire property with barbed wire across the top of some portions of the fence. The fence in the rear of the property was covered with vines and bushes. On top of the rear fence Sergeant Benjamin observed boxes of 15merchandise from the kitchen. The boxes were removed by Joseph Burke using an eight foot ladder. Sergeant Benjamin also observed items stacked outside the perimeter of the facility. He was positive that one of the rear kitchen doors was open when he arrived at the scene and that it appeared to have been forced open. He also observed that the side interior gate was wide open but the lock was still engaged.
OFFICER LIONEL BROOKS:
Direct-examination by the state:
On March 11, 2007, at approximately 11:10 a.m., Officer Brooks arrived at the United Methodist Center on Simon Bolivar Street to assist Sergeant Benjamin. The defendant was in the custody of Sergeant Benjamin at the rear of the building. Brooks observed paper towels, toiletries, toasters and a crock pot on top of a grassy fence. He notified the crime lab. He inspected the interior of the church building for other suspects; none was found. On the exterior door frame of the rear kitchen door he observed pry marks near the deadbolt lock which had been defeated.
Cross-examination by the defense:
Officer Brooks observed that the lock on the outer fence gate was tampered with. The lock on the rear kitchen door was pried open. No tools were found. Brooks did not recall if any of the doors or boxes were dusted for fingerprints by the crime lab technicians. Brooks arrested and charged the defendant.
JOSEPH BURKE (recalled as a rebuttal witness by the defense):
Direct-examination by the defense:
Joseph Burke reiterated that he walked with Sergeant Benjamin toward the rear yard of the facility. All three rear doors appeared to be closed.
Cross-examination by the state:
| i;Mr. Burke could not positively state that all three doors were closed because of the level of activity at the scene.
JIMMIE L. RILEY:
Direct examination by the defense:
On the morning of March 11, 2007, the defendant, Jimmie Riley, was walking to the store to purchase some medicine for his wife. He and his wife have AIDS; he also has hepatitis. The clinic that usually dispensed their medication was not open. As he walked past the volunteer facility he suddenly lost control of his bowels as a result of his depressed immune system. When he saw the rear yard of the facility he believed it to be a playground. Because his clothing was soiled and he had fecal matter running down his leg, he decided to hide in the rear of the facility. He entered the gate and walked to the rear of the facility to remove his soiled *1236 underwear which he tried to stuff between the vine covered fence. He was surprised that Mr. Burke did not see him because Mr. Burke was standing next to him speaking on a cell phone. As he was attempting to stuff his soiled underwear in the fence an officer grabbed him. He tried to climb onto the vines because he did not know who had grabbed him. When he saw that it was an officer he let go of the vines. Sergeant Benjamin questioned him as to what he was doing on the property. He explained his bowel problems and tried to show the officer the soiled underwear. Sergeant Benjamin responded that he did not want to see any soiled underwear and ordered the defendant to shut up; the defendant complied. He denied having anything to do with the burglary. About twenty or thirty minutes later Officer Brooks arrived on the scene.
Cross-examination by the state:
|7The defendant stated that he was walking to a grocery store on Martin Luther King Boulevard and Liberty Street to purchase Pepto-Bismol for his wife. He acknowledged that he lived across the river but was in the neighborhood because he was staying at the home of his fiancée’s children. He described his clothing as a pink shirt, khaki pants and white tennis shoes. He described his pants as being really soiled and messy from the diarrhea. He opined that the Sheriffs department threw the pants away because they were really “stinky”.
OFFICER LIONEL BROOKS (recalled as a rebuttal witness by the state):
Direct-examination by the state:
Officer Brooks arrested and placed the defendant in Officer Erica Winfield’s car to be transported to central lock-up. The defendant was wearing a long sleeve shirt and khaki pants. The pants were dirty with grass stains and grass burrs. Officer Brooks was adamant that there were no feces on the defendant’s body or clothes.

ERRORS PATENT:

A review of the record for errors patent reveals there are none.

DISCUSSION:

ASSIGNMENT OF ERROR:

In his sole assignment of error, the defendant argues that the state failed to present sufficient evidence to support his conviction for simple burglary. Specifically, the defendant argues that the state failed to prove that the defendant entered the property and committed a felony or had the specific intent to commit a felony. He asserts that according to the state’s own witnesses, the defendant was seen just standing in the rear of the building; the defendant was not in possession of any burglary type tools which could have been used to pry open the rear door |8and was not holding any stolen merchandise. Given these facts, the defendant argues that, at most, the evidence supported a verdict of unauthorized entry of a place of business [1] and he requests this court, pursuant to La.C.Cr.P. art. 821(E),[2] to modify the *1237 verdict to the lesser included offense of unauthorized entry of a place of business.
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4th Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall, 523 So.2d at 1309-1310. “[A] reviewing court is not called upon to decide whether |9it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987). If a rational trier of fact reasonably rejects the defendant’s hypothesis of innocence, that hypothesis falls; and, unless another one creates reasonable doubt, the defendant is guilty. State v. Captville, 448 So.2d 676 (La.1984).
The elements of simple burglary are: (1) an unauthorized entry; (2) into a dwelling, vehicle, watercraft, or other structure, moveable or immovable; (3) with the intent to commit a felony or theft therein. La. R.S. 14:62. Specific intent is defined as “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or his failure to act.” La. R.S. 14:10(1). Specific intent may be inferred from the circumstances and actions of the defendant. State v. Williams, 2005-0459 (La.App. 4 Cir. 1/18/06), 925 So.2d 567, writ denied, 2006-1029 (La.11/3/06), 940 So.2d 658.
|10In the instant case, the security company received a signal that the volunteer facility’s burglar alarm had been tripped. Joseph Burke and Sergeant Benjamin observed the defendant standing next to the rear kitchen door which had been pried open. Both Mr. Burke and Sergeant Benjamin observed large quantities of stolen merchandise which had been taken from the facility and were either stacked near or thrown over the fence. Upon seeing Mr. Burke and Sergeant Benjamin, the defendant attempted to escape by climbing the rear fence. The defendant *1238 testified that he walked right past Mr. Burke without being seen, which was contrary to the testimony of Mr. Burke and Sergeant Benjamin. He also testified that he entered from a gate that was later determined to still be locked. None of the witnesses saw or smelled any evidence of diarrhea on the defendant’s body or clothing. In addition, the defendant contradicted himself when he testified that he lived across the river and would not be in the neighborhood to commit a burglary then, in order to justify why he was on the property, changed his testimony saying that he was staying with his fiancée’s children. The jury obviously rejected as not credible the defendant’s version of the facts. A factfinder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence. State v. Huckabay, 2000-1082 (La.App. 4 Cir 2/6/02), 809 So.2d 1093; State v. Harris, 99-3147 (La.App. 4 Cir. 5/31/00), 765 So.2d 432. The state presented sufficient evidence to support the defendant’s conviction.

CONCLUSION:

For the foregoing reasons, we affirm the defendant’s conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.
LOMBARD, J., dissents.

. Pursuant to La.R.S. 14:62.4, unauthorized entry of a place of business is defined in pertinent part as "the intentional entry by a person without authority into any structure or onto any premises, belonging to another, that is completely enclosed by any type of physical barrier that is at least six feet in height and used in whole or in part as a place of business.”

. La.C.Cr.P. art. 821(E) provides: “If the appellate court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.”