PLOTKIN, Judge.
Darryl Thornton was charged by bill of indictment on January 8, 1981, with aggravated rape, a violation of LSA-R.S. 14:42, and with armed robbery, a violation of R.S. 14:64. At his arraignment on January 12, 1981, he pleaded not guilty. After a three-day trial on September 24, 25 and 28, 1981, a twelve-member jury found him guilty as charged on both counts. He was sentenced on November 9, 1981, to life imprisonment without benefit of parole, probation, or suspension of sentence on the aggravated rape conviction and to thirty years at hard labor on the armed robbery conviction. The convictions and sentences were affirmed in an unpublished opinion by. the Louisiana Supreme Court. (State v. Thornton, 420 So.2d 687 (La.1982)).
Darryl Thornton applied for post conviction relief, arguing that he was effectively denied assistance of counsel when appellate counsel did not comply with Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as interpreted by Lofton v. Whitley, 905 F.2d 885 (5th Cir.1990), in the error patent brief filed on his behalf. The defendant was granted a new appeal, 598 So.2d 341, and he now asks that the trial court examine the record for errors patent. In our review of the record, we found that the sentence for armed robbery is illegally lenient. Because the State did not raise this *957 error, it cannot be corrected, and we affirm the convictions and sentences.
At trial Debra Crouseant, the victim, testified that she was raped and robbed at gunpoint by the appellant between midnight and 3 A.M. on November 30, 1980. Crouseant described leaving her home at 10 P.M. on November 29, 1980, and walking for forty-five minutes toward The Meeting Place, a lounge on the corner of Esplanade and Claiborne Avenues. She became aware of someone behind her, and then a man put a pistol to her head and said, “Just come with me.” The man took money from her purse and forced her to walk with him. Crouseant saw two people she knew as they walked, and she called to them. Willie Newton was getting into his car and, not realizing her predicament, just waved to her. As Alvin Rabb approached, Crouseant “grabbed him” and asked him to help her. Rabb told the gunman, who was then holding the gun against Crouseant’s side under a coat, that he wanted the lady to come with him. The gunman answered by pointing the gun in Rabb’s face. Rabb turned and walked away. Crouseant said that she was then forced to enter an abandoned house where he raped and beat her. Later as they were leaving the house, he brought her down the steps, and they hid in a shed as a car passed. He said he was going to kill her if the car stopped. The car drove by, and they walked down Kerlerec Street. When they got to Claiborne and Esplanade Avenues, Crouseant ran into the lounge which had been her original destination. She asked someone she knew there to help her and the police were called; later she was taken to Charity Hospital for an examination. Crouseant said that three times during the ordeal she looked at her assailant’s face. When she stepped toward Alvin Rabb, she looked back at him; when they were walking out of the house, she saw him; and as they walked, she looked at him again. She remembered him as quite tall and wearing a white knit cap, a leather jacket, jeans and Hushpuppy shoes. On December 6, 1980, she identified the appellant from a photographic line-up and then on December 18, 1980, she identified him in a physical line-up.
Willie Newton, Jr., testified that he was getting into his car about midnight on November 30,1980, when he saw Crouseant and a man walking toward him. He waved to her, told her he was coming right back, and left. Alvin Rabb also verified Crouseant’s account of their meeting. He said that while he and Debra were talking, the man next to Debra was holding on to her. When Debra asked Rabb if she could come with him, Rabb said her companion took a gun from beneath her coat and said, “I told you, bro, she’s coming with me.” Rabb was later able to identify the appellant at a photographic lineup as the man he saw with Debra Crouseant.
Sylvia Bell, a barmaid at The Meeting Place, testified that she was at work on November 30,1980, about 3 A.M. when someone told her that a friend of hers needed her in the ladies room. Bell found Crouseant crying; she noticed a scar on Crouseant’s forehead. Bell accompanied Crouseant to Charity Hospital.
Dr. Ronma Krisna, an emergency room physician at Charity, testified that she examined Crouseant to find a superficial laceration on her forehead surrounded by a hematoma, another hematoma on the back of her head, and a small abrasion on the left side of her nose. The injuries were all a few hours old. There were no injuries to the abdomen or the genital area.
NOPD Officer Linda Buchek, who investigated the case, conducted the photographic line-ups when Crouseant and Rabb selected the picture of the appellant. Buchek took a search warrant to 1512 North Derbigny Street, the home of the appellant, on December 13, 1980. In searching his bedroom, Buchek found fourteen rounds of live twenty-two caliber ammunition wrapped in a white handkerchief.
Daniel Waguespack, a criminologist for NOPD, testified that when he tested the panties worn by Crouseant on November 30, 1980, he found seminal fluid, but he could not determine the blood type of the man. If the blood type were discernable, the man would be a “secreter” meaning that the blood type is secreted in body fluids. Eighty percent of the population are secreters. Waguespack also tested a piece of gauze containing a *958 saliva stain from the appellant. He could not detect the type of blood from the saliva stain. He explained that the result could mean either that he did not get enough of the seminal fluid and saliva to get a blood type or that the fluids were from a non-secreter.
Eight of the appellant’s relatives testified on his behalf that he was attending his sister’s wedding at his parents’ home at 1512 North Derbigny on the night of November 29, 1980. Irma Cousins, his mother, and Louis Cousins, his stepfather, testified that the appellant was at home from about 5 P.M. until 1:30 or 2 A.M. except for one twenty minute period at 10:30 when he went out for liquor. Irma Cousins said that when her son left at 1:30 A.M. he went to his girlfriend’s house. Daisy Smith testified that Darryl Thornton was at her house when she woke up on November 30, 1980; she was asleep when he came in and could not say what time that was. Photographs taken that evening depicting the appellant and his family celebrating the wedding were introduced at trial. The photographs depicted the appellant wearing a black Pirates baseball cap, a gray sweater, blue jeans and Hushpuppy shoes. The victim described her assailant as wearing a white knit hat. On cross examination, Irma Cousins denied that when Officer Linda Buchek came to her house on December 13, 1980, to search for a white knit hat, Cousins ever agreed that the appellant had a white knit hat.
In rebuttal Buchek testified that when she went to the appellant’s home to search, Cousins acknowledged Thornton had a white hat and took her to the his room to look for it, but they did not find it.
Counsel has filed a brief requesting only a review for errors patent. Counsel complied with the procedures outlined by Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as interpreted by this Court in State v. Troy Benjamin, 573 So.2d 528 (La.App. 4th Cir.1990). Counsel’s detailed review of the procedural history of the case and the facts of the case indicate a thorough review of the record. Counsel has moved to withdraw because he believes, after a conscientious review of the record, that there are no non-frivolous issues to be raised on appeal. Counsel has reviewed all available transcripts and has found no trial court rulings which arguably support the appeal. A copy of the brief was forwarded to the appellant and this Court informed the defendant that he had the right to file a brief on his own behalf. He has not done so.
As per State v. Troy Benjamin, this Court has performed an independent, thorough review of all the pleadings filed in the district court, all minute entries of the district court proceedings, the bill of information and all transcripts contained in the appeal record. The defendant was properly charged by bill of indictment with violations of R.S. 14:42 and R.S. 14:64 and the bill was signed by the foreman of the grand jury. The defendant was present and represented by counsel at arraignment, all motion hearings, jury selection, trial and sentencing. A review of the trial transcript reveals that the State proved every essential element of aggravated rape and armed robbery beyond a reasonable doubt.
The sentence of life imprisonment without benefit of parole, probation, or suspension of sentence for aggravated rape is legal in all respects. The sentence of thirty years at hard labor for armed robbery is illegally lenient, however, because the trial court did not impose the sentence without benefit of parole, probation, or suspension of sentence as the statute mandates. This error cannot be corrected on appeal because the State did not raise the issue. State v. Scott, 593 So.2d 704, 707-8 (La.App. 4th Cir.1991); State v. Smith, 587 So.2d 62, 64 (La.App. 4th Cir.1991).
Our independent review reveals no non-frivolous issues and a review of all transcripts contained in the appeal record reveals no trial court ruling which arguably supports the appeal. Accordingly, the defendant’s convictions and sentences are affirmed. Appellant counsel’s motion to withdraw is granted.

AFFIRMED; MOTION TO WITHDRAW, GRANTED.