It LOVE, Judge.

STATEMENT OF THE CASE

Henry Laneheart was charged by bill of information on April 22, 1997, with armed robbery, a violation of La. R.S. 14:64. At his arraignment on April 25th, he pleaded not guilty. The trial court found probable cause and denied the motions to suppress the identification and evidence on June 27, 1997. After trial on March 16, 1998, a *1219 twelve-member jury found him guilty as charged. The State filed a multiple bill, and on December 11, 1998, he was sentenced as a second offender under La. R.S. 15:529.1 to serve forty-nine years at hard labor.

STATEMENT OF THE FACTS

At trial, Officer Kevin Thomas testified he investigated a robbery that occurred on March 5, 1997, at 400 North Villere Street. Bobby Soniat, the victim, reported that three men were involved in the robbery; he gave the names of two of the men— Henry Laneheart and Chad Laneheart — ■ and also gave the officer their address. Soniat stated he did not know the third man. Officer Thomas was able to arrest Henry Laneheart several hours after the incident when he found Laneheart in front of his apartment. Laneheart was wearing the O’Henry’s uniform the officer had learned that Laneheart was wearing the night before. Laneheart was ^transported back to South Claiborne Avenue and Tole-dano Street where Soniat identified him as one of the men who robbed him.
Detective Anthony Caprerra testified that he obtained a search warrant for the car driven by Henry Laneheart the night of the robbery. When he searched the vehicle, he found a paycheck for Henry Laneheart from O’Henry’s Restaurant and several other documents belonging to La-neheart.
Bobby Soniat, the twenty-three-year-old kitchen manager for O’Henry’s Restaurant, testified that he has known Henry Laneheart for about five years since they both began working at O’Henry’s. Soniat said that on March 5, 1997, Laneheart came to work about 6:00 p.m. and was scheduled to work until midnight; however, Soniat sent him home about 7:00 p.m. because Laneheart seemed to be intoxicated and was boisterously complaining that his paycheck was not correct. Soniat said he could do nothing about the check and Laneheart knew that. However, as La-neheart was leaving he said, “I’m going to get all you player haters.” Soniat observed Laneheart leaving in his two-toned Bronco truck.
Soniat received his paycheck that day also, and he put $100 in the bank and kept $400 to pay his bills. Leaving work about midnight that evening, he drove home a co-worker who lived in the Magnolia Project. There, Soniat saw Laneheart with two other men who were all getting into Laneheart’s Bronco truck; Laneheart was getting into the driver’s seat. After dropping off his co-worker, Soniat drove to Claiborne Avenue toward his home. As he approached a traffic light at Jackson and Claiborne Avenues, Soniat noticed Laneh-eart’s vehicle in the lane next to him.
Soniat drove to his house at North Vil-lere Street. When he got out of his car, he saw a man, later identified as Torey Gillard, standing right in front of him and holding a gun. The man said, “Give it up,” and “I know you got it.” The | ?,robber was wearing a bandana over his face, but it fell down so that Soniat had a clear view of the robber’s face. The robber had on jeans and a white shirt. Soniat handed over about $460, his I.D., an ATM card, and a health insurance card. A second man with a hood over his face came up during the robbery and told Soniat to take off his shoes. (Soniat testified that he kept money in his shoes and that Laneheart knew it). Soniat called him “Chad,” but the man did not respond. Soniat explained that he thought the man was Chad Laneheart because when he was taking his co-worker home, he noticed Henry Laneheart getting into the Bronco with a man he assumed was Henry’s brother, Chad. After Soniat surrendered his shoes, the two men hurried through a breezeway. Soniat followed and saw that they were getting into a Bronco. The man with the gun turned around and shot at Soniat.
After they left, Soniat returned to his home and told his girlfriend what had happened, and she called the police. Soniat gave the police the names of Chad and Henry Laneheart. Soniat could not give *1220 the name of the gunman, but he recognized him from the neighborhood because he had seen Gillard with Henry Laneheart on occasion. Soniat went with the police officers to a Winn Dixie parking lot where he identified Henry Laneheart as the driver of the Bronco and Chad Laneheart as his accomplice. A few days later, Soniat told the police that Chad Laneheart was not involved in the robbery. He said that a day or two after the incident, he was in the Magnolia Project when he saw a man sitting on a porch who had on the exact clothes as the man Soniat had thought was Chad. Soniat stopped, and when the man noticed him, the man ran up the steps. That man’s name is “Keywand,” and he was not arrested in connection with the offense. Soniat also found out the name of the gunman and gave it to the police, Later [4Soniat identified Torey Gillard’s picture in a photographic line up. When asked how he came up with Gillard’s name, Soniat said that Mrs. Laneheart, the mother of Henry and Chad, had given it to him. She had been questioning neighbors about Chad’s whereabouts on the night of the robbery. She telephoned Soniat to tell him that “Torey” had been the gunman. Soniat gave the police that name, and later he remembered the last name was “Gil-lard.”
Genevia Katrina Coleman, Gillard’s girlfriend, testified that she knew Henry La-neheart as a friend of Gillard.

ERRORS PATENT

Before addressing the assigned error, we note an error patent in the sentence imposed. Laneheart was sentenced to forty-nine and one-half years for armed robbery as a second offender under La. R.S. 14:64 and La. R.S. 15:529.1. His sentence is illegally lenient because La. R.S. 14:64 mandates that a sentence be served without benefit of parole, probation, or suspension of sentence. However, on appeal this court will not correct errors favorable To a defendant where the issue is not raised by the State. State v. Fraser; 484 So.2d 122 (La.1986); State v. Thornton, 630 So.2d 956 (La.App. 4 Cir.1993).

ASSIGNMENT OF ERROR NUMBER ONE

Laneheart argues that the evidence was insufficient to support the armed robbery conviction. Laneheart was convicted of armed robbery which is the taking of anything of value belonging to another from his person through the use of force or intimidation while armed with a dangerous weapon.
When assessing the sufficiency of evidence to support, a conviction, the appellate court must determine whether, viewing the evidence in the light most | ¡¡favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987). Nevertheless, the reviewing court may not disregard its duty to consider whether the evidence is constitutionally sufficient simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s finding must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Id.
Either direct or circumstantial evidence may prove the essential elements of the crime. When circumstantial evidence forms the basis of the conviction, the elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This rule is not *1221 a separate test from the review standard established by Jackson v. Virginia, but rather it is an evidentiary guideline which facilitates appellate review of the sufficiency of the evidence. State v. Jacobs, 504 So.2d 817, 820 (La.1987). Ultimately, to support a conviction, the evidence, whether direct or circumstantial or both, must be sufficient under Jackson to satisfy any rational trier of fact that the defendant is guilty beyond a reasonable doubt. Id.; State v. Hawkins, 90-1235 p. 26-27 (La. App. 4th Cir. 9/15/95), 667 So.2d 1070, 1086, writ granted on other grounds 96-0766 (La.9/13/96), 679 So.2d 97, and affirmed by 96-0766 (La.1/14/97) 688 So.2d 473.
| ^Laneheart maintains that the evidence is insufficient because (1) Soniat never testified that the defendant had a gun or was in the yard when Soniat was robbed, (2) none of Soniat’s property was found on Laneheart or in his Bronco, (3) Soniat testified that he only “assumed” that La-neheart was driving the Bronco, and (4) Soniat’s testimony contained many inconsistencies.
In his first assignment, Laneh-eart argues that he should not have been convicted of the robbery because he was not holding the gun or with the gunman when the robbery occurred. However, the victim’s testimony indicates that he was a principal to the robbery. La. R.S. 14:24 provides: “All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.” In order to support a defendant’s conviction as a principal, the State must show that the defendant had the requisite mental state for the crime. State v. Brooks, 505 So.2d 714 (La.1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987); State v. Hampton, 94-1943 (La.App. 4th Cir.12/27/96), 686 So.2d 1021, writ denied, 97-0166 (La.6/13/97), 695 So.2d 986. Here, Soniat testified that Laneheart threatened him after Soniat dismissed Laneheart from his job early in the evening; then Laneheart and two men were seen together getting into the Bronco shortly before the robbery; next Soniat observed Laneheart driving the Bronco when both were stopped at a traffic light minutes before the offense, and finally, Soniat saw the robber and hooded man running toward the Bronco after the incident. As such, the jury could easily have found beyond a reasonable doubt that La-neheart had the requisite intent and 17was a principal to the armed robbery.

ASSIGNMENT OF ERROR NUMBER TWO

The defendant’s next assignment — that no evidence of the robbery was found in the Bronco — is basically a complaint that the evidence against him is circumstantial. Nevertheless, there was testimony that Laneheart drove a two-toned Bronco with a “T-tag” in the window. Soniat testified he had never known anyone else to drive Laneheart’s Bronco. Furthermore, Soniat said he assumed Laneheart was the driver at the robbery because he had recently seen Laneheart getting into the Bronco, and because no one else knew where he lived.

ASSIGNMENTS OF ERROR NUMBER THREE AND FOUR

Laneheart’s third and fourth assignments will be treated together. At one point Soniat stated that he assumed the defendant was driving the Bronco, and he also testified that he saw Laneheart at the stop signal “for a brief second.” These statements are not contradictory. The victim assumed the defendant was driving because the defendant had been seen getting into the driver’s seat moments before. Moreover, Soniat was cross-examined on all the points Laneheart now argues. Although the record indicates some discrepancies in Soniat’s testimony, all of these points were brought to the attention of the jury. Any inconsistency in testimony was *1222 weighed by the jury and considered in determining, as it did, that Soniat identified Laneheart as the man who drove the get-away car when he was robbed.
Viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that all of the essential elements of armed robbery beyond a reasonable doubt in this case.
^Accordingly, for reasons stated above, the defendant’s conviction and sentence are affirmed.

AFFIRMED.